### MOSSER *v.* KNIGHTS TEMPLARS & MASONS' LIFE INDEMNITY CO.

LIFE INSURANCE—LAPSED POLICY—REINSTATEMENT.

The fact that a life-insurance company, in reply to a letter written on behalf of the wife of a policy-holder, apprising it of the latter's disappearance, suggesting the inadvisability of her continuing the payment of premiums, and inquiring whether, in case the policy should lapse, the insured could be reinstated upon his return, or would be obliged to apply anew, wrote advising the cancellation of the policy, and stating that, in the event of his return, it would do whatever was right in regard to a new policy, after which no further premiums were paid, will not, in the absence of fraud, entitle the wife to a reinstatement of the policy, where the husband died without having returned.

Appeal from Wexford; Aldrich, J. Submitted January 6, 1898. Decided February 16, 1898.

Bill by Sarah A. Mosser against the Knights Templars & Masons' Life Indemnity Company for the reinstatement of an insurance policy. From a decree for complainant, defendant appeals. Reversed.

*Sawyer & Bishop* (*John W. McGrath*, of counsel), for complainant.

*McIntyre & Wetmore*, for defendant.

HOOKER, J.    This suit is based on a policy of insurance, and the complainant obtained a decree reinstating the policy. The defendant asserts that the policy was canceled nearly three years before the husband of the complainant died. The following correspondence will show the foundation for this claim:

"CADILLAC, MICH., Oct. 26, 1893.
"W. H. GRAY, Gen'l Mgr. K. T. & M. L. I. Co.,
                    "Chicago, Ill.
  "*Dear Sir and Bro.:* On the 19th of August last, Bro. John G. Mosser, the holder of policy No. 8,160, made an assignment for benefit of creditors, and, for some unknown reason, left the country. All trace of him was lost at Niagara Falls, Aug. 22, when he took a Grand Trunk train for the West. His wife has paid his assessments in all his insurance companies since that time, but we do not think it advisable for her to continue paying until something further develops. We would like to know if, in case his policy lapses for nonpayment, can he be reinstated when he turns up, or would he be compelled to apply anew? It seems to us that, in the present uncertain state of affairs, Mrs. Mosser had better not risk any further payments, as they would be of no benefit to her. Let us hear from you.
          "Yours, etc.,
              "J. R. BISHOP, H. P.,
                  "Cadillac Ch., No. 103, R. A. M."

                        "CHICAGO, Nov. 4, 1893
"J. R. BISHOP, Esq.,
          "Cadillac, Mich.
  "*Dear Sir:* Yours received and noted. In reply, will say, when Mr. Mosser returns, we will do whatever is right, in the way of issuing a new policy; but, under the circumstances, I would not approve of the continuation of the old policy, since, should he die, it would not be known when or where he died, all of which would have to be in strict accordance with the provisions of the policy, and be furnished as information, in the event of death, to show he had not violated any of the terms of the policy while he was gone. The best thing to do would be to let the policy cancel, and, if he returns, we could consider him for a new policy, waiving the entrance

fee on the proper papers being furnished. With best wishes, I am,

"Yours respectfully,

"W. H. GRAY, General Manager."

We think it clear, from this record, that the complainant, acting under the advice of her friends, determined to, and did, allow the policy to be canceled. The defendant made no promise to do more than "to do what is right, upon an application for a new policy, in case of his return." There is not a suggestion of fraud or overreaching, nor is there anything that could constitute an estoppel. The solicitors for the complainant say that the complainant acted upon the advice of the defendant. This is doubtless true, in a sense; but it was advice sought by her, and conformed to the opinions of her own friends. We discover no just reason for compelling the payment of the policy, or any rule of law which would warrant it.

The decree is reversed, and complainant's bill is dismissed, with costs of both courts.

The other Justices concurred.