Rhyner vs. The City of Menasha.

RHYNER, Respondent, vs. THE CITY OF MENASHA, Appellant.

May 16 — June 21, 1900.

Special verdict: Instructions to jury: Municipal corporations: Defective streets: Personal injuries: Negligence: " Ordinary care: " Intoxication: Contributory negligence: Notice: Measure of damages.

1. When a special verdict is to be rendered, instructions, whether asked by the parties or given by the court, appropriate to each question, should be submitted to the jury in immediate connection with the question to which they are, respectively, applicable, and a failure in that regard is error. Instructions only applicable to a general verdict should not be given.

2. Under sec. 1339, Stats. 1898 (imposing responsibility on the municipality for any damage which shall happen to any person by reason of the insufficiency or want of repair of any street within its limits), a special verdict, finding in the disjunctive that the street was "in a defective or dangerous condition or out of repair," without any other fact to support it, fails to show actionable negligence and is fatally defective; and the fact that the finding is in the words of sec. 20, subch. VIII, of the city charter (ch. 123, Laws of 1891), which does not assume to impose any liability on the city but merely relates to notice, does not render it sufficient.

3. A hole in the street, close to the sidewalk, was two feet long and fifteen inches wide, in the shape of a half moon, and had apparently been caused by the washing of surface water escaping from the street. Its dimensions and the duration of its existence were sharply in dispute. Held, that it was not, as matter of law, such a defect as would make the city absolutely liable for a personal injury caused thereby.

Rhyner vs. The City of Menasha.

4. In such case it is error not to submit, as part of the special verdict,. a question as to whether the city authorities ought, under all the circumstances, reasonably to have anticipated that an accident might happen and injury be sustained by travelers in the street,— the court's attention having been directed to the matter by a request for the submission of an objectionable question embodying the idea.

5. In an action for personal injuries from a defective street, an instruction that "Negligence means this: It means a want or lack of ordinary care and prudence. Ordinary care and prudence is such care and prudence as is exercised by the mass of mankind in their own daily affairs," without qualification or limiting it to the same or similar circumstances to those in issue, is error; and such error is not cured by afterwards correctly instructing the jury that ordinary care and prudence means such care and prudence as persons of ordinary care and prudence exercise under similar circumstances. ·

6. Where, in an action for personal injuries from a defective street,. the issue of plaintiff's intoxication is submitted to the jury, the defendant is entitled to an instruction that, if plaintiff was intoxicated, such intoxication is evidence from which the jury may infer that plaintiff was guilty of contributory negligence, the instruction being requested in conjunction with another connecting such intoxication with the accident.

7. Where, in an action against a city for an injury from a defective street, the evidence shows that the plaintiff was very much intoxicated at the time of the accident, it is a question for the jury, under proper instructions, whether, under all the facts and circumstances in the case, such intoxication contributed to produce the injury.

8. Sec. 20, subch. VIII, of the charter of the city of Menasha (ch. 123, Laws of 1891) provides that the city shall not be liable for damages for injuries from defective streets, unless it be shown that one of the aldermen had actual knowledge of the defect, or unless the defect shall have existed three weeks, provided that knowledge shall not be presumed from the lapse of such period. *Held*, that actual knowledge not being relied upon and the existence of the defect being for the jury, an instruction to the jury that if they found the defect had existed for three weeks prior to an injury therefrom they might presume and find the city had knowledge thereof, is erroneous: the instruction should have been so framed as to permit the jury to find whether, under all the facts and circumstances of the case, the conditions were such as to bring constructive notice home to the city.

9. In an action against the city for a broken leg caused by a defective street, happening in November 1891, it is error to admit the evidence of plaintiff's physician that he performed an operation on plaintiff's leg in the summer of 1893 for which he charged $100, there being no testimony showing any necessary or causal connection between the injury and the subsequent operation.

10. Where, in an action against a city for an injury caused by a defective street, a witness testifies that he passed the place of accident while plaintiff was lying there, but that it was too dark to recognize who was there, it is error to afterwards recall the witness and permit him to testify, over objection, that he saw no indications that the man lying there was drunk.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

The plaintiff brings this action to recover damages for injuries sustained by him by reason of his having fallen in a hole in one of defendant's streets. The defect shown was a hole close to the sidewalk, about two feet long and fifteen inches wide, in the shape of a half moon, apparently caused by surface water from the street running under the sidewalk. The hole was unguarded. Plaintiff was passing along the street on a dark, rainy evening, and his hat blew off. Upon returning from the pursuit of his hat, he stepped into the hole, and broke his leg. The plaintiff's proof showed the hole had existed from a few weeks to several months. The answer was a general denial.

The jury found the following special verdict: " (1) Did the plaintiff sustain the injury at the time and place alleged and claimed by him? Yes. (2) If you answer the first question, 'Yes,' then answer the following: Was the said street at the place where the plaintiff claims to have been injured at the time in a defective or dangerous condition or out of repair? Yes. (3) Did such injury happen to the plaintiff by reason of the defective or dangerous condition or want of repair in said street? Yes. (4) Was plaintiff's injury caused by the negligence of the defendant? Yes.

(5) If you answer the third question, 'Yes,' then answer the following question: Had such defective or dangerous condition or want of repair of said street existed for three weeks or more previous to the happening of said injury? Yes. (6) At the time of the injury, and some time before, had the plaintiff knowledge of such hole and condition of said street? Yes. (7) Was the plaintiff guilty of a want of ordinary care and prudence which contributed proximately to the injury? No. (8) Was the plaintiff intoxicated at the time he received the injury? Yes. (9) If you answer the last question, 'Yes,' then answer the following question: Was the plaintiff at the time he received the injury so intoxicated as to be incapable of managing and conducting himself with ordinary care and prudence? No. (10) [Omitted. Not answered.] (11) If the plaintiff is entitled to recover, at what sum do you assess his damages? Eight hundred dollars ($800.00)."

The plaintiff submitted fourteen requests for instructions, all of which were given. Defendant asked the court to instruct upon forty-three separate propositions of law, some of which were given as requested, others modified and then given, and the remainder refused. The court also gave brief instructions as to each question. The record fails to disclose at what stage of the proceedings the requested instructions were given. A motion for a new trial was denied, and judgment was entered for plaintiff, from which the defendant has taken this appeal.

For the appellant there was a brief by *Bouck & Hilton*, and oral argument by *Gabe Bouck*.

For the respondent there was a brief by *Eaton & Weed*, attorneys, and *A. E. Thompson*, of counsel, and oral argument by *M. H. Eaton*.

BARDEEN, J. A great multitude of questions are raised on this appeal. The defendant complains that evidence

was improperly received; that improper instructions were
given, and proper ones refused; that the special verdict is
bad; that the-question as to the alleged defect in the street,
with the jury's answer thereto, does not find actionable
negligence; that the question of contributory negligence
was not properly submitted; and that under the evidence
the answers to some of the questions are inconsistent.  In
fact there are very few things that transpired during the
course of the trial against which some complaint is not.
made.  We have no desire or disposition to scold or lecture
counsel or the trial court, but there are some things in this.
record justly open to criticism, and sufficient to call for a.
protest on our part against their repetition.  In order to;
consider and determine the many questions raised on this.
appeal, it is necessary to review the charge to the jury and
its application to the several questions of the special verdict.
It is impossible to tell from the record just what instructions.
the court gave with reference to any single question in the
verdict.  In the general charge the court refers to the sev-
eral questions, and does little more than state the claims of
the respective parties, with an admonition to the jury to.
find the facts according to the evidence.

Turning, now, to the plaintiff's requests, we find a list of
fourteen distinct propositions of law, which the record re-
cites were given, and to which the defendant excepted.
Many of these requests contain abstract propositions of law,.
proper to have been given had the case been submitted on a
general verdict, but distinctly improper when a special ver-
dict is required.  Not one of them is addressed to any par-
ticular question, although some of them would have been
proper had they referred to and been given when the jury's.
attention was being directed to the particular fact for de-
cision.  The record fails to show at what stage of the pro-
ceedings these requests were given, or whether they were
given with reference to any particular question.  The rule

Rhyner vs. The City of Menasha.

which commends itself to our judgment is as stated in *Mc-Dermott v. Jackson*, 102 Wis. 419, and *Schaidler v. C. & N. W. R. Co.* 102 Wis. 564: "If a special verdict be rendered, the instructions appropriate to each question, whether asked by the parties or given by the court of its own motion, should be submitted to the jury in immediate connection with the questions to which they are, respectively, applicable. This is the only way in which the jury can obtain an intelligent appreciation of the legal propositions which are to govern them in answering the various questions." This rule is self-evident, and a failure to observe it tends to confusion, and is likely to lead to harmful results. As noted, several of the propositions requested were mere legal abstractions, correct as propositions of law and applicable in case of a general verdict, but of no helpful value to the jury in the decision of the questions of fact in the case. The object of a special verdict is to obtain from the jury answers to certain questions of fact, without regard to their legal effect upon the rights of the parties, and thus obtain a result as far as possible free from sympathy or prejudice. The giving of instructions only applicable to a general verdict tends to defeat that object, and undermines the foundation upon which a special verdict should stand. *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215. The errors in this regard are greatly increased when we come to consider the defendant's requests. In a thicket of some forty-three distinct propositions so requested, there are many susceptible to the objections already stated. Some were given and some refused, and it is only after a laborious search through the case, assisted by the record, are we able to determine that result. This difficulty emphasizes the necessity of the rule stated that all the instructions with reference to a given question should be grouped and given at one time, and so preserved in the printed case that this court will not be compelled to go on a hunt to ascertain the law given to the jury. These reflec-

tions are not made in a spirit of fault-finding, but to indicate how difficult it is to determine just what instructions were actually given with reference to any particular question in the verdict.

Question No. 2 of the verdict, and the answer thereto, are as follows: "Was the said street at the place where the plaintiff claims to have been injured at the time in a defective or dangerous condition or out of repair?" "Yes." The objection suggested to this finding and to the verdict is that it does not cover any fact which establishes the city's liability under the statute. The city's liability is imposed by sec. 1339, Stats. 1898, which makes it responsible for any damage which shall happen to any person "by reason of the insufficiency or want of repairs" of any street within its limits. Under this section, the test of the city's liability is whether such street was in a reasonably safe condition for use. A street may be defective or out of repair and still be in a reasonably safe condition for travel. Hence the finding in the disjunctive that the street was "in a defective or dangerous condition or out of repair," without any other fact to support it, fails to show actionable negligence. It is not enough to say that the court properly instructed the jury as to the measure of the defendant's liability. The verdict on its face must find the *facts*, or it is fatally defective. *Kucera v. Merrill L. Co.* 91 Wis. 637. But it is said that this finding is in the words of the charter of the city (sec. 20, subch. VIII, ch. 123, Laws of 1891), and is therefore sufficient. That section does not assume to impose any liability upon the city, but merely relates to the question of notice.

The defect complained of was a hole about two feet long and fifteen inches wide, in the shape of a half moon, and close to the sidewalk. It had apparently been caused by the washing of surface water escaping from the street. Its dimensions was a matter sharply in dispute, as was also its existence for any great length of time in the condition tes-

tified to by plaintiff's witnesses. Considering the size and
location of the hole, the court would not have been justified
in holding as a matter of law that the street was not in a
reasonably safe condition for use. That was a question
properly for the determination of the jury, under all the
facts in the case. In view of these facts, the defendant
asked the court to submit this question: "Might it reason-
ably have been expected that such an injury would result
therefrom?" While the question was objectionable as limit-
ing the elements of anticipation to "such an injury," yet it
was sufficient to direct the court's attention to the matter,
and a question ought to have been submitted embodying the
idea of whether the city authorities ought, under all the cir-
cumstances, reasonably to have anticipated that an accident
might happen and injury be sustained by travelers in the
street.

A multitude of objections are urged against the charge
of the court, some of which will now be noticed. By ques-
tion 4 the jury found that plaintiff's injury was caused by
defendant's negligence. The court charged the jury as fol-
lows: "Negligence means this: It means a want or lack of
ordinary care and prudence. Ordinary care and prudence
is such care and prudence as is exercised by the mass of man-
kind in their own daily affairs." A similar instruction was
condemned in the recent case of *Boelter v. Ross L. Co.* 103
Wis. 324. But to further confuse the case, the court, at
defendant's request, and with reference to the standard by
which plaintiff must act, instructed the jury that "ordinary
care and prudence means the care and prudence which per-
sons of ordinary care and prudence exercise under similar
circumstances." This was correct, but, considered in con-
nection with the one above referred to, it left the jury with-
out any very definite idea of what ordinary care really
meant. In cases of this kind, the same standard of care is
required of both plaintiff and defendant, and is such as the

Rhyner vs. The City of Menasha.

surrounding circumstances seem to require, and not such as men usually exercise in their daily affairs.

Several objections are made to the manner in which the issue of plaintiff's intoxication was submitted to the jury. In his general charge the court admonished the jury to find the fact according to the evidence whether he was drunk, and whether the intoxication was such as to render him incapable of exercising ordinary care. The first question was answered in the affirmative, and the latter in the negative.

At the request of the parties the court gave a number of instructions covering the questions of intoxication and plaintiff's duty to exercise care, but it does not appear that they were addressed to any particular question in the verdict. We cannot notice all the objections that are taken. The fact that the court did not apply the instructions requested and given to the question to which they were applicable was distinct error, as already noted.

The court instructed the jury that the burden of proving intoxication was upon the defendant, as was the burden of showing that by reason thereof the plaintiff did not exercise ordinary care, and that they could not " assume contributory negligence in the absence of satisfactory proof on that point." In this connection the court refused to instruct that, "if plaintiff was intoxicated, such intoxication is evidence from which the jury may infer that plaintiff was guilty of contributory negligence." There can be no doubt of the rule that negligence may be inferred from circumstances, and while, as a matter of law, intoxication is not contributory negligence, or conclusive evidence of such negligence as will prevent a recovery, still such intoxication is evidence of negligence from which the jury are at liberty to infer such negligence as will bar the action, if the attendant facts so warrant. The defendant was entitled to the instruction asked in view of a further instruction asked and refused

Rhyner vs. The City of Menasha.

which connected such intoxication with the accident. Beach, Contrib. Neg. § 390; *Seymer v. Lake*, 66 Wis. 651.

Another objection to the finding as to intoxication arises from the evidence. The plaintiff and his witnesses deny that he was intoxicated. Of the defendant's witnesses, the doctor who treated plaintiff immediately after the accident says he was "pretty drunk." The bridge tender, who was near the place of the accident, said he was "pretty well drunk," and that he saw him stagger and fall down. Another witness saw him lying on the sidewalk shortly before the accident, and offered to help him up. His estimate of his condition was that he "was good drunk." A hotel keeper at whose place the plaintiff called between four and five o'clock in the afternoon testified that he staggered and held himself up on the chairs; that he was drunk, and "very staggery." One or two others saw him in the same condition. Several men also testified to conversations with plaintiff after the accident, in which he admitted his intoxication. Substantially all of the witnesses agree that his condition was such that he staggered and was unable to control himself.

The point is made that, if there was evidence sufficient to show intoxication as the jury found, the same evidence shows that he was in such a state of intoxication as to be unable to properly care himself, and that the finding of the jury that he was not so intoxicated as to be incapable of conducting himself with ordinary care is contrary to the evidence and inconsistent. There is considerable force to this suggestion. In the light of the evidence, it is difficult to see how the jury arrived at the conclusion stated. The overwhelming weight of evidence is that he was so intoxicated as to be incapable of caring for himself. Whether such intoxication contributed to produce the injury was a question for the jury under proper instructions and a consideration of all the facts and circumstances in the case.

By the fifth finding the jury found that the defective con-
dition of the street had existed three weeks or more previous
to the accident.   At the request of the plaintiff the court
instructed the jury that, if they found that this condition
had existed three weeks or more prior to the date of the
accident, they might presume and find that the defendant
had knowledge thereof, and was liable for such damages as
the plaintiff sustained, if he was in the exercise of ordinary
care.   This question, and the instruction thereunder, was
submitted in view of a provision of the city charter which
provides that "the city shall not be liable for damages in
such cases, .  .  .   unless it be shown that previous to the
happening of the same, one of the aldermen of the city of
*Menasha* had knowledge thereof, and no knowledge of such
condition of the same should be presumed, unless the defect
existed three weeks before such damages accrued, provided,
however, that nothing here contained shall be so considered
as to mean that knowledge shall be presumed because such
three weeks had elapsed."   Sec. 20, subch. VIII, ch. 123,
Laws of 1891.

A similar provision in the charter of the city of Oshkosh
has been construed in several cases in this court.   *Studley
v. Oshkosh*, 45 Wis. 380; *Sullivan v. Oshkosh*, 55 Wis. 508;
*Adams v. Oshkosh*, 71 Wis. 49.   In the *Studley Case* we read:
"But we cannot think that the legislature intended to re-
lieve the city of Oshkosh from all liability for injuries caused
by defective streets therein, unless notice in fact of such de-
fects be given to an alderman of the proper ward, in a case
in which the defect is patent, and readily discoverable upon
due official examination and inspection of the streets.   In
such a case we think the legislature intended, in the absence
of actual notice to the alderman, to give the city three weeks
in which to discover and remove the defect, and, failing to
do so in that time, to hold the city liable for the conse-
quences of its negligence."   In the *Sullivan Case* it is said:
" Under this section it is necessary for the plaintiff (in the

absence of proof of knowledge of the defect by an alderman
of the ward) to show that the defect had in fact existed for
three weeks or more before the accident, and in addition
such other facts as would charge the aldermen or other
proper authorities of the city with notice of such defect.
The fact that the defect had existed for three weeks had no
more force now in charging the officers with notice than it
had before this law was enacted. . . . Under the law,
the plaintiff, if she did not rely upon previous knowledge of
the defect by the aldermen of the ward, must show that the
defect in the walk had existed for three weeks, and she must
also show such a state of facts as will charge the proper city
officers with notice of the defect before the accident happens."

Under these decisions, it is apparent that, unless it can
be said that the defect in question was of such a nature and
of such long standing as to charge the city with notice, the
court's instruction was improper, and the jury's finding will
not support a judgment.   Considering the nature of the de-
fect, and its location with reference to the customary use of
the street, we have already determined that the court could
not say, as a matter of law, that it was such a defect as
would make the city absolutely liable.   That was a matter
for the jury to find, under all the facts and circumstances
in the case.   Such being the fact, and actual notice not being
relied upon, the question should have been so framed as to
permit the jury to find whether the conditions were such as
to bring constructive notice home to the city.   This becomes
all the more significant when we consider that the witnesses
who testified that the hole had existed for several months
before the accident did not describe its appearance or dimen-
sions when first observed.   It is a matter of common knowl-
edge that a hole located as this was would be very likely to
enlarge more or less during the rainy fall months.

Plaintiff's accident happened in November, 1891.   Dr.
Oviatt was permitted to testify that he performed an opera-
tion on plaintiff's leg in the summer of 1893, for which he

charged $100. The record contains no testimony showing any necessary or causal connection between the injury and the subsequent operation. Unless so connected, the evidence was improper.

One August Ebert testified that he was passing the place of the accident while the plaintiff was lying there, but that it was so dark that he could not recognize who was there. Subsequently he was recalled, and asked whether, in his judgment, the plaintiff was intoxicated. Against defendant's objection, he was permitted to answer that he saw no indications that the man was drunk. The testimony was clearly improper.

Other objections have been raised and discussed, but sufficient has been said to cover those that are deemed material.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.