## SNOWBALL *v.* SEABOARD AIR-LINE RAILWAY.

1. Where the evidence affords an inference that a person was killed on a public-road crossing by the running of a railroad locomotive, and the attendant circumstances are not conclusive that the homicide was attributable to the negligence of the deceased person, or could not have been prevented by the exercise of reasonable care and diligence by the agents of the railroad company in charge of the locomotive, the court should submit the questions of negligence and diligence to the jury.
2. The excluded evidence was irrelevant, and did not illustrate any issue made by the pleadings.

Argued October 16, 1907.—Decided February 7, 1908.

Action for damages. Before Judge Parker. Camden superior court. July 13, 1907.

*Harry F. Dunwody* and *Osborne & Lawrence,* for plaintiff.

*Crovatt & Whitfield,* for defendant.

EVANS, P. J. In her suit against the Seaboard Air-Line Railway Mrs. Josephine Snowball claimed damages for the alleged wrongful death of her husband, caused by the negligent operation of the defendant's locomotive and train. It was alleged that the homicide occurred in the State of Florida; and the Florida statutes as to the right of the plaintiff to maintain the action, and the pre-

sumption of negligence on proof of the injury, were pleaded and proved on the trial. At the conclusion of the testimony the judge directed a verdict for the defendant, which he refused to set aside on motion for a new trial. The grounds of the motion were, that the court erred in directing a verdict for the defendant, and in excluding certain evidence.

1. We have carefully examined the evidence, and have reached the conclusion that the court should have submitted the case to the jury. Without setting out the evidence, it suffices to say that two theories as to the cause of the death of the plaintiff's husband may be deduced: one that he was killed by the locomotive of the defendant; and the other that he was murdered and left on the track, and was dead when the locomotive passed over the body. If the jury should find that he was killed by the locomotive of the defendant, was the killing a negligent killing? The petition alleged that the railroad company was negligent, (1) in failing to give warning of the approach of the train to a public crossing; (2) in running the train at a high rate of speed; (3) in failing to keep a proper lookout. The body was found on the railroad track near a public-road crossing, considerably mutilated, an arm and a leg being severed from the trunk. From the physical signs on the ground and track it was inferable that the body was struck by the locomotive at O'Neal public-road crossing. The engineer, fireman, and conductor of the train which passed over his body were not aware of the fact until the train reached Fernandina, about eight miles distant, when the hat of the deceased was taken from under the engine. When the engineer was shown the hat, he recalled that he had seen something white on the crossing, and said to his fireman: "Do you suppose somebody was on the crossing?" And the fireman replied, "I don't know." The engineer requested the crew of a train about to depart in the direction of the public-road crossing at O'Neal, "to look on that crossing to see if there was anything there." The crew of this train discovered the body of the plaintiff's husband at this point three or four hours after it had been run over by the passenger-train. The engineer and fireman both testified that they maintained a lookout; that the track just before reaching the crossing was straight. The engineer saw, when he was within 300 feet of the crossing, something white on the track, which he took for a piece of paper. In that distance he

could have stopped his engine if. he had known anything was on the track. The engineer further testified that he gave the usual signal on approaching the station at O'Neal (which was a flag-station) ; and as he received no response from the conductor that he had any passengers to disembark, he blew the whistle for the O'Neal road crossing. The rate of speed was variously estimated by the defendant's agents in charge of the train, at from eight to fourteen miles an hour; though from data appearing in the testimony a much higher rate of speed might be inferred. The plaintiff's husband was last seen in life at from half an hour to an hour before the train passed over his body. He left the house of a neighbor, going towards the railroad track. His home was down the track just beyond the crossing where his body was found. He was perfectly sober. The plaintiff's husband was employed by the defendant as section foreman, but he was not engaged at work for the defendant when he met his death.

Under this evidence can the court say as a matter of law that the defendant company had measured up to its full legal duty? In the first place, this employee was not on duty at the time of his death, and not engaged in the operation of the train which is alleged to have killed him. Relatively to the railroad company he stands upon the same footing as a member of the public. *S., F. & W. Ry. Co.* v. *Flannagan,* 82 *Ga.* 580 (9 S. E. 471, 4 Am. St. R. 483). The evidence affords an inference that the plaintiff's husband was killed on the public-road crossing. If he was on the road crossing, and while there was killed by the train, he was not a trespasser. *Williams* v. *Southern Ry. Co.,* 126 *Ga.* 710 (55 S. E. 948). If these facts were found by the jury (and there was evidence to warrant such conclusions), the railroad company owed the plaintiff's husband the duty to observe ordinary care in discovering his presence on the public-road crossing, and in protecting him against injury from the passing train. On the other hand he was bound to exercise reasonable prudence in protecting himself from collision with the train. Less than an hour before the passenger-train passed over his body the deceased was seen within 250 yards of the crossing. He was not drinking and appeared sober. The evidence does not indicate his position, whether standing or prostrate on the track, when his body was struck by the train, unless we infer he was lying down from the engineer's statement that he saw some-

thing on the track which seemed to be a piece of white paper. Admitting, for the sake of the argument, that he was lying on the track at the crossing, it was for the jury to find from the facts whether his presence would have been known by the maintenance of a proper lookout. It was for the jury to say whether ordinary care would require the engineer to closely scan the track as he was approaching a public crossing, and whether on this occasion, if he had maintained a close watch, he would have distinguished the body of the plaintiff's husband on the track from a piece of paper. If the deceased had been seized by a sudden accession of illness and had fallen unconscious on the track, he would not have been wanting in care so as to defeat a recovery for his death, if the agents of the defendant could have averted the killing in the exercise of proper care. Then, too, as neither the engineer nor fireman felt any jolt as the engine passed over the body, the jury might possibly infer that they were not maintaining such a lookout as ordinary care would require in approaching a public crossing. The evidence tended strongly to support the verdict directed by the court, but did not demand it. Where the question is one of diligence or negligence, and a particular conclusion is sought to be established from a given state of facts, the jury are the alchemists to make the test, and announce the result. *West End & Atlanta St. Ry. Co.* v. *Mozely,* 79 *Ga.* 463 (4 S. E. 324) ; *F. C. & P. R. Co.* v. *Pitts,* 112 *Ga.* 846 (38 S. E. 85). The Florida statute is identical with the Civil Code, §2321, to the effect that on proof of injury to persons or property by the running of cars, the burden is on the railroad company to make it appear that their agents have exercised all ordinary and reasonable care and diligence to prevent the injury. We think the case should have been submitted to the jury under appropriate instructions.

2. The court properly rejected evidence offered to prove a state of facts from which an inference could be drawn that the railroad company had impliedly licensed the general public in using a path on its right of way alongside its track. The petition alleged that the plaintiff's husband was killed on the public-road crossing. The probata should agree with what is alleged. The rejected evidence was irrelevant.

*Judgment reversed. All the Justices concur, except Atkinson, J., disqualified.*