J. T. REYNOLDS, Appellant, v. CHICAGO, GREAT WESTERN RAILROAD COMPANY.

Railroads: TRESPASSING ANIMALS: NEGLIGENCE: EVIDENCE. The employees of a railway company are under no obligation to the owner of stock trespassing upon the right of way, until their presence is discovered; but upon discovery of their peril it becomes the duty of trainmen to exercise reasonable care to avoid injuring them. In the instant case the evidence is held to require submission of the question whether the engineer saw plaintiff's horses in time to have avoided the accident.

*Appeal from Calhoun District Court:*—HON. F. M. POWERS, Judge.

WEDNESDAY, APRIL -9, 1913.

ACTION for the value of two horses killed in a collision with defendant's engine resulted in a directed verdict for

the defendant and judgment thereon.  The plaintiff appeals.
—*Reversed*.

*Healy & Healy*, for appellant.

*E. C. Stevenson* and *Carr, Carr & Evans*, for appellee.

LADD, J.—The defendant's track passed through the farm
occupied by plaintiff as a tenant.  There was a private cross-
ing, and in the afternoon of January 4, 1911, shortly before
4 o'clock, plaintiff's son and an employee undertook to take
six head of horses from the barnyard over this crossing into
the cornstalk field beyond.  Three of the horses escaped and
ran down the track, but, as the train approached, turned
back, and two of them were killed by the engine about sixty
rods from the crossing.  The day was clear.  Snow covered
the ground at considerable depth on both sides of the track.
For a mile and more either way from the crossing, the grade
was level and stock on the track might be seen.  The train
was moving at the rate of fifteen or twenty miles an hour,
and, according to the testimony of the fireman, might have
stopped while moving three hundred feet.  He testified that:
"It had been storming.  There was lots of snow.  The engine
was a regular snowball.  A snowball was all there was about
it, and we were both wringing wet.  The engine had windows
in front from the engineer's cab and the fireman's cab.  They
had a little board on the front to keep the snow from break-
ing the windows.  They were all covered up with snow.
Q.  With the board on there and the snow, could you see
out.  A.  I couldn't on account of the snow being piled
up along the side of the board, or any one could not see
out.  .  .  .  There was lots of snow and ice and frost on
the windows.  In order to look out, the engineer and I
slipped the window back, the side windows.  You couldn't
open the front windows with the boards on.  It was then that
I discovered that there was a horse on the pilot.  .  .  ."

Redirect: "Q. When that engine was running south toward Carroll, the engineer's seat is on the north side of the engine? A. Yes, sir. Q. The engineer, Mr. Wilson, was at his post, was he? A. Yes, sir. Q. Sitting on the north side of the seat in the cab occupied usually by the engineer? A. Yes, sir. Q. He was looking ahead? A. Yes, sir. Q. Looking toward the front of his engine all the time from the time he left Lohrville until the time you reached the horses? A. Yes, sir."

The engineer was dead at the time of the trial. Plaintiff's son who had undertaken to run around the horses was near the track when the engine passed. He was asked: "Q. Did you notice or observe the window in front of the cab, the window of the cab as it went through? A. Yes sir. Q. Tell the jury whether there were any boards, frost, ice, or snow on any of those windows as the engine went by you? A. No, sir; there was not." Cross-examination: "I mean the front and side windows, both the front and side windows. I had noticed to see the front window all the time. It was when the engine was approaching me that I saw the front window, and I stood out by the railroad track and let the engine by, and I couldn't see the front window then. Q. What was it called your attention to the front windows that there were no boards there? A. Looking for the engineer. Q. Did you see into the engine. A. Yes, sir. Q. How far in could you see? A. Well, it is rather a little grade there, and I couldn't see very far; I was pretty low. There were curtains on the side of the engine. They were canvas curtains, I think." Redirect examination: "Those canvas curtains were connected between the engine and the tender."

This witness had previously testified that he had "looked at the windows of the engine as it went but did not see any face at the cab window." His testimony on this point may be reconciled with that of the fireman on the theory that he may have been so much lower than the engine that the engineer was out of the line of his vision. As to whether the

front lights were covered with boards, snow, or frost there was a dispute, and which witness should have been credited was for the jury to determine. The horses were on the track without right and the defendant's employees owed plaintiff no duty with respect to them until their presence was actually discovered. *Mears v. Railway,* 103 Iowa, 203. But upon discovering their peril such employees were required to exercise reasonable care to stop the train in time to avoid injuring them, and in determining whether they discovered the horses on the track prior to the collision the plaintiff is not concluded by the testimony of the employees, but the jury are to determine this from all the evidence and adduced circumstances proven. As the day was clear, the track for a mile ahead within line of vision of one looking from the cab in the direction the engine was moving, the cab windows were unobscured by snow, frost, or boards, as the jury might have found and the engineer was at his station in the cab actually looking in the direction the engine was moving, the issue as to whether he actually saw the horses in time to have avoided injuring them, had he exercised ordinary care after their discovery, was for the jury to determine. *Purcell v. Railway,* 117 Iowa, 667; *Gregory v. Railway,* 126 Iowa, 231; *Johnson v. Railway,* 122 Iowa, 556; *Farrell v. Railway,* 123 Iowa, 690; *Christiansen v. Railway,* 140 Iowa, 345; *Tarashonsky v. Railway,* 139 Iowa, 709.

The court erred in not submitting the issues to the jury.

The judgment is *Reversed.*