**CHICAGO G. W. R. CO. et al. v. ROBINSON.***

**No. 11231.**

Circuit Court of Appeals, Eighth Circuit.

March 6, 1939.

WOODROUGH, Circuit Judge, dissenting.

David A. Fitch, of Omaha, Neb. (Norris Brown, Ralph M. West, and Robert A. Fitch, all of Omaha, Neb., on the brief), for appellants.

R. B. Hasselquist, of Omaha, Neb. (Donald S. Krause, of Omaha, Neb., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment against appellants for damages for person-

*Rehearing denied March 25, 1939.

al injuries sustained by appellee, plaintiff below, as a result of being run over by appellants' locomotive.

The plaintiff in his petition, as amended, alleged that the injuries for which he demanded damages were the direct and proximate result of the negligence of the defendants and their agents, the engineer and fireman in charge of the locomotive. The answer admitted the accident and resulting injuries, denied the charge of negligence and alleged that the injuries complained of were due solely and entirely to plaintiff's contributory negligence. The case was tried to a jury and a verdict was returned for the plaintiff. Various acts of negligence were alleged in the petition, but the court submitted only one: whether or not defendants were negligent in failing to keep a lookout ahead as the engine approached the place where the accident occurred. No complaint is made because other alleged grounds of negligence were not submitted.

At the conclusion of the introduction of evidence defendants moved for a directed verdict on the ground that the evidence is insufficient to support a verdict in favor of the plaintiff and against the defendants, which motion was overruled.

The appellants seek reversal on the grounds: (1) that the evidence is insufficient to support the charge of negligence submitted to the jury; (2) that the evidence establishes as a matter of law the contributory negligence of plaintiff; (3) that the court erred in the admission of certain evidence over defendants' objections; and (4) that the court erred in refusing a requested instruction relating to the alleged intoxication of the plaintiff at the time of the accident.

Since the verdict was for the plaintiff the evidence, in so far as it is in conflict, on the questions of negligence and contributory negligence must be viewed in the light most favorable to him, Megan v. Stevens, 8 Cir., 91 F.2d 419, 420, 113 A.L.R. 992; and if there be any substantial evidence to support the verdict it can not be set aside on appeal. Columbian Nat. Life Ins. Co. v. Comfort, 8 Cir., 84 F.2d 291, 292; Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492.

In brief the evidence discloses that the acts resulting in the injuries complained of occurred a few minutes after sundown at approximately 7:45 p. m. on August 2, 1936, at a point about 15 feet west of the switch in defendants' railroad tracks on the outskirts, but within the corporate limits, of the City of Des Moines, Iowa. At that time and place plaintiff was lying unconscious across the tracks when defendants' locomotive traveling westward without cars on a single track at a speed of four to five miles an hour ran over him, causing the injuries for which he seeks redress. No one witnessed the accident.

At the western limits of the city of Des Moines defendants' railroad runs in a straight line east and west for a distance of more than a mile and a half. From the place where the accident occurred a switch track leads along the south side of the main line eastward to the yards. Some distance north of the right of way a street runs parallel with the tracks. The space between the street and right of way is occupied by several houses and is sprinkled with trees and gardens. Scattered residences cover the land south of the tracks. The nearest street crossing to the east of the place where the accident happened is about a half mile distant while the nearest crossing west is a mile away. A drive way runs from the right of way near the switch north to the parallel street. A well-defined pathway extends from the street north of the tracks southward across the tracks to another parallel street. This pathway had been in use for many years and was used by many people with the acquiescence of the defendants. The pathway was ordinarily smooth, but some days prior to the date of the accident the trackmen had made repairs, leaving a wire or pipe between the north and south rail protruding some inches above the level of the ties.

The plaintiff, a farm hand, had been at the home of his brother, who lived in one of the houses north of the tracks, during the evening. About 15 minutes before the accident occurred he started to walk along the pathway across the tracks on his way south. As he came upon the railroad he looked while walking across and between the rails east and west for an approaching train. In so doing he tripped on the protruding wire and fell. His head struck the rail and rendered him unconscious. He so remained lying across the tracks until the locomotive ran over him, seriously injuring him. At the time he was wearing bibless overalls and a light gray shirt. Prior to the accident he was in good health. He was 28 years of age. There is conflicting testimony as to whether or not he was intoxicated. This will be referred to later.

The engineer in charge of the locomotive testified that the engine had been cut from the train and was being driven toward the west switch at the time; that he could see the tracks for perhaps half a mile; that he looked to the west to see whether the target was lined up when about 1,000 feet away but saw no one on the track; that he then turned in his seat to take signals from the brakeman on the back end and did not look down the track to the west again. He first discovered that a man had been run over after the engine was stopped at the switch. The locomotive was drifting without power. The air had been applied some distance east of the switch; and the engine as it approached at the rate of 4 to 5 miles an hour could have been stopped within a distance of 25 to 35 feet. The locomotive was 104 to 105 feet in length, and the engineer when looking forward could not see the tracks ahead within about 200 feet because of the forward part of the engine. The testimony of the fireman was substantially to the same effect. He did not look westward as the place of the accident was approached for a distance of 1,000 to 2,000 feet. Visibility at the time was clear and they could see ahead westward along the tracks for approximately a mile.

■ In view of the evidence of existence of the pathway over which plaintiff was walking at the time of the accident it is conceded that the rule stated by the court in his charge to the jury is correct: that it was the duty of the engineer and fireman on the engine "to use reasonable care to keep a look-out ahead as the engine approached said place (of the accident) for persons whose presence on the tracks should reasonably be anticipated at such place when the engine would arrive there. And if there was such a failure to use such reasonable care under such circumstances, it was negligence on the part of the defendants." The defendants excepted to the instruction only on the ground that ordinary care required the engineer and fireman to keep a look-out for persons walking, standing up, and not for persons who might be lying on the ground between the tracks. This objection is without merit. Ordinary care required a look-out for persons whatever their position at the point where the pathway crossed the tracks. Clegg v. Southern Ry. Co., 132 N.C. 292, 43 S.E. 836; Id., 133 N.C. 303, 45 S.E. 657; Pickett v. Wilmington & W. R. Co., 117 N.C. 616, 23 S.E. 264, 30 L.R.A. 257, 53 Am.St.

Rep. 611; Oliver v. Iowa Central Ry. Co., 122 Iowa 217, 97 N.W. 1072, 1074. The point suggested bears only upon the question of the possibility of seeing the person in time to have stopped the engine before the accident occurred. This was a question for the jury to determine in the light of all the surrounding circumstances. If plaintiff was clearly visible so that the engine men could or should have seen him when lying down then it was for the jury to say whether or not they were in the exercise of ordinary care. The evidence plainly supports the verdict of the jury that they were negligent. At the rate the engine was moving plaintiff was in view for a period of 12 to 15 minutes before the accident occurred, during which time neither engineer nor fireman looked ahead, although they knew they were approaching a pathway where persons might be crossing over the tracks. The testimony supports the finding that plaintiff was clearly visible lying down during all that time.

■ The case is controlled by the law of Iowa. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. In the case of Calwell v. M. & St. L. R. Co., 138 Iowa 32, 115 N.W. 605, 607, the Supreme Court of Iowa said that in the case of a licensee on a pathway crossing a railroad track "the company, in the operation of its trains, owed to the users of this way the same care that it would owe the public at any highway or street crossing."

In Tarashonsky v. Illinois Cent. R. Co., 139 Iowa 709, 117 N.W. 1074, 1075, where a child was killed in crossing a used pathway the court said: "Even though the employés [of the railroad company] did not see the boy on the track, if he was passing along a licensed way, they were bound to keep a lookout for travelers; and if, in the exercise of ordinary diligence, they might have discovered him in time so that, by reasonable vigilance, a collision could have been obviated, the company cannot escape liability."

See, also, Clampit v. Chicago St. P. & K. C. Ry. Co., 84 Iowa 71, 50 N.W. 673; Thomas v. C., M. & St. P. Ry. Co., 103 Iowa 649, 72 N.W. 783, 39 L.R.A. 399; Bourrett v. Chicago & N. W. Ry. Co., Iowa, 121 N.W. 380; Booth v. Union Terminal Ry. Co., 126 Iowa 8, 101 N.W. 147; Gregory v. Wabash R. Co., 126 Iowa 230, 101 N.W. 761; Reynolds v. Chicago G. W. R. Co., 159 Iowa 317, 140 N.W. 825.

Neither is there merit in the claim that plaintiff was guilty of contributory negligence as a matter of law. One is not negligent necessarily in attempting to walk across a railroad track over or along a recognized pathway, if he looks and listens before attempting to do so. Thompson v. Northern Pac. R. Co., 9 Cir., 93 F. 384; Texas & P. Ry. Co. v. Salazar, 5 Cir., 30 F. 2d 682; Phillips Petroleum Co. v. Miller, 8 Cir., 84 F.2d 148; Christiansen v. Illinois Cent. R. Co., 140 Iowa 345, 118 N.W. 387. This the plaintiff did. He can not be charged with negligence after the moment when he was rendered unconscious by the accidental fall on the tracks. Snowball v. Seaboard Air Line Ry., 130 Ga. 83, 60 S.E. 189, 124 Am.St.Rep. 177; McKeon v. Steinway R. Co., 20 App.Div. 601, 47 N.Y.S. 374.

Upon the trial of the case several photographs were introduced in evidence by each of the parties. Five of those introduced by plaintiff were enlargements of kodak pictures and one was taken on a moving picture film. The enlarged photographs showed the plaintiff lying on the track between the rails at the point where the accident occurred dressed as he was on the day of the injury. They were taken at different distances from points on the track east of where plaintiff lay. The moving picture film was taken of the same still object with the camera moving from a distance on the track and approaching plaintiff as he lay between the rails. These were objected to because it was not shown that the human eye could have seen as easily and plainly as the camera registered; that the pictures emphasized the light color of plaintiff's shirt; that enlarged pictures only magnify the size of the negative but lose the value of distance; and that by the use of the pictures plaintiff was attempting to prove by a set-up what the situation was immediately before the accident.

Foundation was laid for the introduction of the photographs by showing that the place shown in the pictures was the place where the accident occurred; and that the conditions as to visibility and all other surrounding circumstances remained unchanged from the date of the accident until the pictures were taken. The defendants introduced expert testimony to show the effect of the enlargement of a picture and that the plaintiff's shirt appeared lighter in the picture than it would to the human eye.

Upon this question the court instructed the jury as follows: "Photographs have been introduced in evidence by both sides and some moving picture films have been exhibited to you, seeking to show to you the appearance and the surroundings at the scene of the accident, as well as appearances which a man made, when, after the accident he lay down upon the track while pictures were taken at different distances. Some enlargements of some of these pictures have also been given in evidence. There has been some testimony to the effect that some of these enlarged photographs do not truly reflect what the human eye would see at the same distance and at another time of day. It is for you gentlemen of the jury to say from the evidence, what was visible to the enginemen at the time of the accident remembering that you are to judge by what the human eyes of the enginemen saw or could have seen by the use of reasonable care under the circumstances, and that the eyes of the camera or the lenses, as we call them, and the film on which the impressions are made and developed, are not necessarily the real test of what the human eyes would have or did see by the use of ordinary care."

We think there was no error in view of the instruction in admitting the photographs in evidence. The admission or rejection of a photograph in evidence is a matter within the sound discretion of the trial court; and, in the absence of an abuse of such discretion, the court's ruling will not be disturbed on appeal. Gose v. True, 197 Iowa 1094, 198 N.W. 528, 530; Nolte v. Chicago, R. I. & P. Ry. Co., 165 Iowa 721, 147 N.W. 192; Cubbage v. Estate of Conrad Youngerman, 155 Iowa 39, 134 N.W. 1074, 1078; Ingebretsen v. Minneapolis & St. L. R. Co., 176 Iowa 74, 155 N.W. 327; Faivre v. Mandercheid, 117 Iowa 724, 90 N.W. 76.

Lastly, appellants contend that the court erred in refusing to instruct on the subject of the intoxication of plaintiff at the time of the accident. The evidence as to the intoxication of plaintiff is in conflict. He testified that he had not been drinking intoxicating liquor except only that he had taken a small bottle of beer with his supper and that he was not intoxicated to any extent whatever. A number of witnesses who saw him shortly prior to the time of the accident testified that he appeared perfectly normal. Opposed to this is the testimony of defendants' witness-

es who saw him after the accident. The three physicians who attended plaintiff at the hospital after he was injured testified that he appeared to be intoxicated and that there was the odor of alcohol about his person. Obviously the question of intoxication was a circumstance for the consideration of the jury on the issue of contributory negligence. On this issue the court instructed the jury as follows:

"If you should find that the defendant was guilty of negligence in the respect as submitted to you by these instructions, and if you should also find that such negligence was the proximate cause of injury to the plaintiff, still the plaintiff would not be entitled to recover in this case if he also was guilty of any negligence which contributed to his injury. That is, guilty of any negligence in failing to use reasonable care to observe where he was walking so that the result of his negligence caused him to fall where he did.

"Upon this question you have a right to consider all the circumstances relating to his falling. You have a right to consider the plug and wires between it, on this question, and the rail; the ties; the ballast; the ability of plaintiff to observe and to understand what he was doing; what he did and how he did it at the time he fell; whether he looked for trains; whether he looked where his steps were taking him; whether the rails, the plug, the wires or other things in his pathway were observable, but here again the real question to be determined is whether or not the plaintiff used such care as a reasonably prudent man would have used under the circumstances.

"I have said that plaintiff would not be entitled to recover in this case if any negligence of his contributed to his injury, and that means that he could not recover even if his own negligence was only slight, provided it contributed to his injury."

To this instruction counsel for defendants excepted and requested an instruction, which was refused, as follows: "Defendants except to that part of your honor's instructions in which you are discussing the negligence of the plaintiff, or contributory negligence, and in which you advise jury as to plaintiff's duty under all the circumstances, with reference to the wire, rail, ballast and so forth and as to what he did and whether he looked, and whether he could see or could not see for the reason that your honor has failed to instruct the jury with reference to what the effect would be if they find that the plaintiff was intoxicated on the day of the accident and that his position on defendant's tracks with the resulting injuries were caused by or was the result of his intoxication, and the defendant at this time requests the court to instruct the jury that if they find that the plaintiff was, at the time of the accident and prior thereto, intoxicated and that by reason of such intoxication and as a result thereof, he was lying on the defendant's tracks at the time and place, that under such circumstances that his injuries would be deemed to be the result of his own acts and that the plaintiff cannot be excused from negligence on the ground that he may have been intoxicated but, on the contrary, that intoxication being a condition acquired voluntarily that any damages which may have resulted by reason of his intoxication would therefore be the result of his own act for which the defendants would not be liable. And in this connection, if the court please, I desire to call your honor's attention to the fact that yesterday when we were discussing this case after the close of the evidence, that I inquired of your honor as to your intention to instruct upon intoxication and the effect of it, and as I recall it, your honor stated in effect that it was one of the elements which you would cover."

The discussion referred to in defendants' exception in connection with the requested instruction was as follows:

"Mr. Fitch: That is correct, I think, your Honor, but I was just wondering what your Honor thought would be as to what instruction would be proper with regard to intoxication if they find that he was intoxicated.

"The Court: Well, that is one of the elements of his conduct.

"Mr. Fitch: That is the way I would consider it to be, the fact if intoxication does or does not prove contributory negligence.

"The Court: No, it is for the jury to consider what he did under the circumstances, and intoxication would be a circumstance, if it existed."

Clearly the court did not promise to give a more detailed instruction on contributory negligence than was actually given. In fact there is no claim that counsel for defendants were deceived or misled by the court. And defendants do not contend that the instruction as given is erroneous. Their claim is rather that in view of the

conflicting testimony on intoxication they were entitled upon request to a specific instruction upon that element of plaintiff's negligence. We assume that as a general proposition defendants' position is correct. Even so they would not be entitled to any instruction whether it stated the law correctly or not. They were entitled only to have given an instruction which correctly stated the law of Iowa on that matter.

It will be observed that the court instructed the jury that upon the question of plaintiff's negligence they should "consider all the circumstances relating to his falling * * * the ability of the plaintiff to observe and to understand what he was doing * * * whether or not the plaintiff used such care as a reasonably prudent man would have used under the circumstances."

To add to this the requested instruction without any qualification would, we think, be the equivalent of telling the jury that if the plaintiff was intoxicated and his intoxication caused or contributed to the happening of the accident and his injuries, the defendants would not be liable, irrespective of their own negligence. This is not the rule in Iowa where the accident occurred. A similar situation was considered and determined by the Supreme Court of Iowa in the case of Hughes v. Chicago, R. I. & P. Ry. Co., 150 Iowa 232, 129 N.W. 956, 957. The requested instruction in that case is sufficiently described in the following excerpt from the opinion. Mr. Justice Deemer, speaking for the court, said:

"We shall first consider the instruction refused. This states, in so many words, that if plaintiff, when injured, was under the influence of intoxicating liquors, this in itself would constitute negligence, and that, if this intoxication in any degree contributed to his injury, plaintiff could not recover. It will be noted that the instruction so asked does not refer to the extent of the intoxication, but characterizes any degree as contributory negligence as a matter of law. We think this was too broad, and that the trial court correctly refused to give it. That one is intoxicated when injured does not of itself constitute contributory negligence, but it is a circumstance to be considered in bearing upon the question of his care. Weymire v. Wolfe, 52 Iowa 533, 3 N.W. 541; Cramer v. City [of Burlington] 42 Iowa 315; O'Keefe v. Railroad, 32 Iowa 467; Sylvester v. Town [of Casey] 110 Iowa 256, 81 N.W. 455. One cannot voluntarily incapacitate himself from the abil-

ity to exercise ordinary care, and then recover for an injury to which a want of ordinary care upon his part while so intoxicated proximately contributes. In other words, intoxication is not alone a bar to recovery unless by reason of such intoxication the party injured fails to exercise the ordinary care of a sober man or is unable by reason thereof to take the usual and ordinary precautions to avoid danger. Kingston v. Ft. Wayne Co., 112 Mich. 40, 70 N. W. 315, 74 N.W. 230, 40 L.R.A. 131; Seymer v. Lake, 66 Wis. 651, 29 N.W. 554. Yet intoxication in any degree is a circumstance to be considered in determining the question of contributory negligence. Rhyner v. Menasha, 107 Wis. 201, 83 N.W. 303; Sylvester v. Casey, 110 Iowa 256, 81 N.W. 455; Wynn v. Allard, 5 Watts & S. (Pa.) 524; Fisher v. Railroad, 42 W.Va. 183, 24 S.E. 570, 33 L.R.A. 69. These propositions are so well fortified by authority that nothing more need be said regarding defendant's request."

The plaintiff's intoxication was not an issue in this case. The issues were whether the defendants were negligent and whether the plaintiff was guilty of contributory negligence. His evidence showed that, whether intoxicated or not, he walked to the place of the accident, that he tripped on a projecting wire and fell, and that he struck his head upon the rail and became unconscious. The important consideration was not whether the plaintiff came to be where he was because he was intoxicated, but whether he failed to use ordinary care and was thus guilty of contributory negligence. It seems clear that the requested instruction did not follow the Iowa rule, and, for that reason, the court could not have erred in refusing to give it.

It is the rule in the federal courts that "A party cannot assign for error, the refusal of an instruction to which he has not a right to the full extent as stated, and in its precise terms; the court is not bound to give a modified instruction varying from the one prayed". Catts v. Phalen, 2 How. 376, 382, 43 U.S. 376, 381, 11 L.Ed. 306. See, also, Beaver v. Taylor, 93 U.S. 46, 54, 23 L.Ed. 797; Rio Grande Western R. Co. v. Leak, 163 U.S. 280, 16 S.Ct. 1020, 41 L. Ed. 160; Grand Trunk R. Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485; Fowler v. Brantly, 14 Pet. 318, 39 U.S. 318, 321, 10 L.Ed. 473; Liberty Bell Gold Mining Co. v. Smuggler-Union Mining Co., 8 Cir., 203 F. 795, 808; Kercheval v. Allen, 8 Cir.,

220 F. 262, 268. The same rule is followed in Iowa. Tarashonsky v. Illinois Cent. R. Co., 139 Iowa 709, 117 N.W. 1074; Gray v. Chicago, R. I. & P. Ry. Co., 160 Iowa 1, 139 N.W. 934; Rowe v. United Commercial Travelers' Ass'n., 186 Iowa 454, 172 N. W. 454, 4 A.L.R. 1235.

There was no error upon the trial, and the judgment is affirmed.

WOODROUGH, Circuit Judge, dissents.