SAMUEL L. FOWLER, PLAINTIFF IN ERROR, *vs.* HARRIS BRANTLY
AND OTHERS, DEFENDANTS IN ERROR.

Action on a promissory note for two thousand dollars, drawn for the purpose of being dis-
counted at the Branch Bank at Mobile, payable to the cashier of the bank or bearer, and
upon which was written an order to credit the person to whom the note was sent, to be
by him offered for discount to the bank for the use of the drawers, the order being signed
by all the makers of the note. The bank refused to discount the note, and it was marked
with a pencil mark, in the manner in which notes are marked by the bank which are
offered for discount. The agent of the drawers, to whom the note was entrusted to be
offered for discount, put it into circulation, after endorsing it; having disposed of it for
one thousand two hundred dollars, for his own benefit, without the knowledge of the
drawers; and communicated to the purchaser of the note that it had been offered for dis-
count, and rejected by the bank. The note was afterwards given to other persons in part
payment of a previous debt, and credit for the amount was given in the account with
their debtors. The form of the note was that required by the bank when notes are dis-
counted, and had not been used before it had been so required by the bank. The Cir-
cuit Court instructed the jury that the plaintiff was not entitled to recover from the draw-
ers of the note. Held, that the instruction was correct.

The known custom of the bank, and its ordinary modes of transacting business, including
the prescribed forms of notes offered for discount, entered into the contract of those giving
notes for the purpose of having them discounted at the bank; and the parties to the
note must be understood as having agreed to govern themselves by such customs and
modes of doing business: and this, whether they had actual knowledge of them or not:
and it was the especial duty of all those dealing with the note to ascertain them, if un-
known. This is the established doctrine of the Supreme Court, as laid down in Ren-
ner *vs.* The Bank of Columbia, 9 Wheat.; in Mills *vs.* The Bank of the United States,
11 Wheat.; and in The Bank of Washington *vs.* Triplett and Neale, 1 Peters, 32.

A note over-due, or a bill dishonoured, is a circumstance of suspicion to put those dealing
for it afterwards on their guard; and in whose hands it is open to the same defences it
was in the hands of the holder, when it fell due. After maturity, such paper cannot be
negotiated.

IN error to the Circuit Court of the United States for the Southern
District of Alabama.

In the Circuit Court of Alabama an action was instituted on a pro-
missory note, by the plaintiff in error, against the defendants; and
a verdict and judgment were entered for the defendants. The plain-
tiff took exception to the charge of the Court, and prosecuted this
writ of error.

The facts of the case, and the matters which were the subjects of
the exceptions taken to the rulings of the Court, are fully stated in
the opinion of the Court.

The case was argued at January term, 1839, by Mr. Ogden, for
the plaintiff in error; and by Mr. Van De Graff, for the defendants.
It was held under advisement, for a reference to a statute of Alaba-
ma, until this term.

Mr. Justice CATRON delivered the opinion of the Court.
This is an action of assumpsit by the assignee of a note against

the makers.    The questions of law arising in this cause depend on the construction of a note of hand, in the following words:

"*Selma, Dallas County, Alabama, March 1st,* 1836.
" Eleven months after date, we, Harris Brantly, Peyton S. Graves, and Hugh Ferguson, jointly and severally, promise to pay Andrew Armstrong, cashier, or bearer, two thousand dollars, value received, negotiable and payable at the Branch Bank of the state of Alabama, at Mobile.            (Signed)            HARRIS BRANTLY,
                                          PEYTON S. GRAVES,
                                          HUGH FERGUSON.

" Credit : Diego M'Voy.
            HARRIS BRANTLY,
            PEYTON S. GRAVES,
            HUGH FERGUSON."

The note had on it the two endorsements of Diego M'Voy and William D. Primrose ; and that of Taulmin, Hazard, and Company was stricken out.    On the face of the note there was, in pencil, the figures 169.

The defendants, the three makers, introduced evidence to prove that the note, in its present form, (except the endorsements,) was sent by one of the makers to M'Voy, who was his factor in Mobile, to be offered for discount in the Branch Bank of the state in that city as an accommodation note; the proceeds of which were to be forwarded to said maker.    That the note was offered for discount and rejected.    The factor then proposed to raise money on the note for his own use, without the knowledge of the makers, and intended to conceal the appropriation of the note from them.    The first person to whom he offered to sell the note deemed the attempt a fraud, and refused to purchase.    M'Voy then endorsed and transferred the note to Primrose for one thousand two hundred dollars, communicating to him it had been offered for discount at the bank and rejected.

Taulmin, Hazard, and Company held a note for three thousand two hundred and fifty dollars, on Black, endorsed by Vail and Dade, and by Primrose, and which was past due ; to discharge which, in part, Primrose transferred the note in controversy to Taulmin, Hazard, and Company; and Taulmin, Hazard, and Company endorsed the same before its maturity, to the plaintiff, Fowler, and received credit on their account; they being largely indebted to him at the time.

The leading feature in the cause, involving the principle on which it turns, is this : the note was in the form prescribed by the bank to those who desired accommodations at it; which form was not in use before its adoption there.    The memorandum on the left hand side of the note, and signed by the drawers, was designed to show the officers of the bank to whose credit the money was to be placed,

should the note be discounted; and by the usages of the bank, no other person than the one thus named could receive the money.

. Primrose testified, he knew from the pencil mark on the face of the note, it had been offered for discount and refused, when he purchased it. The cashier proved the pencil mark was made according to the usage of the bank on all notes offered for discount and refused.

To a part of the first instruction, that held, if the plaintiff took the note in payment of a pre-existing debt, due to him from Taulmin, Hazard, and Company, then the jury ought to find for the defendants, exception is taken; and the Court refused to instruct the jury, that, if the plaintiff took the note fairly in payment of a debt due to him, before its maturity, without notice of the purpose for which M'Voy had held it, then he was entitled to recover. ·

. And also refused to instruct, if the jury believed plaintiff took the note bona fide in payment of a previous debt, that he had no notice of any fraud; and there were no circumstances to put him upon an inquiry into any fraud committed on the part of M'Voy, he was entitled to recover. ·

There were other instructions asked, and refused; but, as they are in effect the same as those recited, an answer to which will cover the whole case, they need not be further noticed.

The known customs of the bank, and its ordinary modes of transacting business, including the prescribed forms of notes offered for discount, were matters of proof, and entered into the contract; and the parties to it must be understood as having governed themselves by such customs and modes of doing business; and this, whether they had actual knowledge of them, or not; and it was especially the duty of all those dealing for the paper in question to ascertain them if unknown. Such is the established doctrine of this Court, as laid down in Renner vs. The Bank of Columbia, 9 Wheaton. Mills vs. The Bank of the United States, 11 Wheaton, and the Bank of Washington vs. Triplett and Neale, 1 Peters, 32, 33.

The note sued on is peculiar in its form; it was made for the purposes of discount, and only intended for negotiation at the bank, and not for circulation out of it. The pencil mark on its face when sold, was common to all rejected paper, and was put there by the officers of the bank as evidence of the fact that it had been offered and rejected; and those dealing for it, with the mark on its face, must be presumed to have had knowledge what it imported; as the slightest inquiry would have ascertained its meaning. These were the legal presumptions attached to the contract, when the plaintiff purchased it; and the explanatory evidence to prove the custom of the bank, was introduced to enlighten the Court and jury in regard to the rules governing the transaction, and furnishing the law of the case; and which the plaintiff, when he purchased the paper, is presumed to have known and understood; as the Court knew and understood it after it was proved on the trial.

This was the case made up of law and fact, on which the Court

was asked to charge the jury; and not the abstract proposition whether, on a proper construction of the statutes of Alabama, negotiable paper, payable in bank, purchased bona fide, and without notice of an existing infirmity, but taken in discharge of a pre-existing debt, carried the infirmity with it into the hands of the purchaser; for the reason, that the mode of payment was not in the usual course of trade.

A note over-due, or bill dishonoured, is a circumstance of suspicion, to put those dealing for it afterwards on their guard; and in whose hands it is open for the same defences it was in the hands of the holder when it fell due. 13 Peters, 79. After maturity, such paper cannot be negotiable "in the due course of trade;" although still assignable.

So the paper before us carried on its face circumstances of suspicion, so palpable as to put those dealing for it, before maturity, on their guard; and as to require at their hands strict inquiry into the title of those through whose hands it had passed. Failing to be thus diligent, they must abide by the misfortune their negligence imposed, and stand in the condition of M'Voy.

As between him and the defendants, there was no contract or liability on their part: nor as bearer of the note, could he lawfully pass it off in the due course of trade, so as to communicate a better title to another; the face of the paper betraying its character and purposes, and M'Voy's want of authority.

All the rulings of the Court below must be referred to this paper, and to the special case made by the proofs. Any instruction asked, which cannot be given to the whole extent asked, may be simply refused; or it may be modified, at the discretion of the Court. No instruction was asked, that could have been lawfully given; to every one, the Court could well say, and did in substance say, that under no circumstances could a purchase of this note be made by the plaintiff, from Taulmin, Hazard, and Company, so as to exempt it in the hands of the assignee, from the infirmity it was subject to in the hands of M'Voy.

And in regard to the last part of the first instruction, where the jury is in substance told, that if they believed the note was taken in payment of a pre-existing debt, due to plaintiff, from Taulmin, Hazard, and Company, still they should find for the defendants: the Court might have gone further, and instructed the jury, that neither could the plaintiff recover had the note been purchased bona fide, and without notice of the fraudulent conduct of M'Voy.

The judgment is, therefore, ordered to be affirmed.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Alabama, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.