## CROSBY v. GRANT.

A negotiable promissory note is dishonored in the hands of a *bonâ fide* holder for value, who takes it without notice of a defect in the consideration, within business hours, on the last day of grace; and he takes it in the usual course of business, if it be negotiated to him as a new party, upon a purchase and sale, independent of any previous connection with it, or with any of the parties to it, although he may take it on the last day of grace from a bank where it had been discounted for a previous holder.

Whether the doctrine that a party who takes a note under circumstances of suspicion, such as ought to put him on inquiry, holds it subject to the equitable defences which might be made to it as between prior parties, is law, *quære?* but if it be, the facts that the note was taken on the last day of grace from a bank in Boston, where it had been discounted, the maker residing at Great Falls, in this State, and the full amount thereof paid to the bank, and that at the trial the indorsements of several parties appeared to have been erased from the note, leaving upon it that of the payee alone, do not constitute a case for the application of the doctrine.

ASSUMPSIT, upon a promissory note, signed by the defendant, payable to Bradford & Macomber, or order, in four months, and by them indorsed to the plaintiff. Plea, the general issue.

The defence rested upon two grounds: First, payment; and, second, that the note was given for spirituous liquors, sold in Massachusetts without license, contrary to the law of that State, and that the plaintiff received the note under such circumstances

as to be chargeable with this defence. There was evidence tending to prove that Bradford & Macomber sold the note to Tisdale before it matured; that Tisdale got it discounted at the New-England Bank, and that the defendant paid the amount of the note on the last day of grace, at the bank, and took it away.

There was also evidence tending to show that the note was given for spirituous liquors, sold without license, in Massachusetts, contrary to the laws of that State, and that the plaintiff had knowledge of the fact at the time the note was given. Some of the evidence further tended to show that the plaintiff did not become the owner of the note till some time after it fell due.

There was also evidence tending to show that the defendant never paid the note; that the plaintiff took it from the bank within bank hours on the last day of grace, and that he had no knowledge of the consideration for which the note was given.

On the back appeared the indorsement of the payees, and also the indorsement of Tisdale, erased, and apparently another indorsement, but so erased as to be illegible.

The defendant contended before the jury that the note was taken from the bank by the plaintiff (if taken at all by him) under such circumstances, and the appearance of the note was such as amounted to notice to him that there was something wrong about the note, and that, as it was not usual and common for men who are not parties to a note to take it from a bank where it has been discounted, on the last day of grace, this, with the erasures of the indorsements appearing on the back, were sufficient grounds on which to charge the plaintiff with notice of the illegality in the consideration; but no request was made to the court to charge the jury on this point.

The court instructed the jury that if they found the note had been paid by the defendant; or that it was given for liquors, sold contrary to law, and that the plaintiff had knowledge of the fact; or that it was given for liquors sold contrary to law, and the plaintiff became the owner of the note after it fell due; in either of these cases their verdict should be for the defendant.

But if they found the defendant had never paid it, and that it

was not given for liquors sold contrary to law ; or, if so given, that the plaintiff had no knowledge of it, and that he took it from the bank during bank hours, on the last day of grace, paying a full consideration for it, then their verdict should be for the plaintiff.

The jury returned a verdict for the plaintiff, which the defendant moves to set aside, and for a new trial, on the ground of error in the instructions of the court.

*Jordan & Rollins*, for the plaintiff.

The defence of payment was properly submitted to the jury, and negatived by their verdict. No exception lies to the instructions on this part of the case.

The instructions were correct upon the other branch of the defence. *Covie* v. *Baldwin*, 12 Pick. 545 ; *Wheeler* v. *Guild*, 20 Pick. 545 ; *Doe* v. *Burnham*, 21 N. H. (1 Foster) 426. The jury must have found that the plaintiff became the owner of the note on the last day of grace, during bank hours, or before, paying a full consideration for it, and that he had no knowledge for what the note was given. If he had had actual or constructive notice of the defect in the consideration, the verdict under the intructions must have been for the defendant, and it was competent for them to infer this knowledge from the consideration under which he became the holder ; but they found him to be a *bonâ fide* holder for value.

No demand need be made on dishonored paper, before suit brought against the maker upon it. But no suit could have been brought against this defendant when the plaintiff became the holder, without a demand. *Greeley & al.* v. *Thurston*, 4 Me. 479 ; *Lund & al.* v. *Adams & al.*, 17 Me. 230. This note was consequently not overdue when it came into the hands of the plaintiff.

Again : the instructions given were applicable to the facts of which there was evidence in the case ; and if further instructions were desired by the defendant, he should have moved the court

for them at the trial. *Moore* v. *Ross*, 1 N. H. 547; *Wait* v. *Marswell*, 5 Pick. 217; *Leach* v. *Wood*, 14 Pick. 461.

*Wells & Eastman*, for the defendant.

The instructions of the court were substantially that although the note might have been given for liquor, sold contrary to law, the verdict should have been for the plaintiff, unless it appeared that he had *actual* knowledge of the fact, or took the note after it fell due. In other words, that actual knowledge, or taking the note overdue, were the only grounds upon which Grant might be allowed to set up the defence against the plaintiff.

These instructions were erroneous. We contended that two other facts appear in the case, both of which must have been found by the jury, and either of which is sufficient to entitle the defendant to make this defence against the plaintiff: viz., *first*, the note was not taken in the ordinary or usual course of business; and, *second*, it was taken under circumstances sufficient to awaken the suspicion of the plaintiff and put him on inquiry.

When the defendant had proved the illegality of the consideration, as between the original parties, the *onus* was thrown upon the plaintiff to prove himself a *bonâ fide* holder. Chitty on Bills 650, 662. After it was shown that the note was void in the hands of the payees, in order to enable the plaintiff to recover, he must show not only that it was not overdue when he took it, and that he had no knowledge of the illegality of the consideration, but also that he took it in the ordinary course of business, and under circumstances not calculated to awaken suspicion, or put him on inquiry. Bayley on Bills 544; 3 Kent's Com. 80, 81; 1 Amer. Lead. Cases 328, 336, 338; *Ayer* v. *Hutchins*, 4 Mass. 37; *Thompson* v. *Hall*, 6 Pick. 262; *Cone* v. *Baldwin*, 12 Pick. 545; *Foster* v. *Leland*, 4 Cush. 458; *Aldrich* v. *Warren*, 16 Me. 465; *Swift* v. *Tyson*, 16 Pet. 1; *Wheeler* v. *Guild*, 20 Pick. 545; *Emerson* v. *Crocker*, 5 N. H. 163; *Carleton* v. *Bayley*, 27 N. H. (7 Foster) 235; *Doe* v. *Burnham*, 31 N. H. (11 Foster) 431. The circumstances that the note was in a bank in Boston, the maker residing at Great Falls, N. H.; that it was

taken on the last day of grace, and full amount paid, and that the erasures were made of the indorsements, are sufficient to have put the plaintiff on inquiry.

SAWYER, J.   Under the instructions given to the jury, the verdict establishes the facts that the note in suit has not been paid by the defendant, by whom it was signed as maker, and that the plaintiff, when he became the holder, paying a full consideration for it on the last day of grace, had no actual knowledge of the illegality of the consideration, if any such existed.   No question arises upon the instructions, so far as they relate to these points.   They were entirely correct in these respects, and were such as the state of the evidence required.

When a note, as in this case, is payable, generally, in order to charge the indorsers, it must be presented to the maker for payment within reasonable hours, on the last day of grace, unless circumstances exist to excuse the holder from thus presenting it, and subsequent notice of the non-payment forwarded to the indorsers.   It is notice of the dishonor of the bill or note which is required to be thus given, in order to fix the liability of the indorser. The notice must consequently be given subsequently to the presentment, though it may be on the same day.   To charge the indorser, then, the note is dishonored when, having been presented to the maker within reasonable hours, on the last day of grace, he neglects to pay it.   The presentment, if not made to the signer personally, may be made at his place of business, or counting-house, or at his place of residence.   If at the former, the reasonable hours within which it is to be made are those during which such place of business is usually kept open, according to the usage of the place, if such there be ; otherwise, within the usual hours for transacting business there by the maker.   If at the latter, between the reasonable hours for rising in the morning and retiring at night.   Story on Prom. Notes, sec. 226; *Bank* v. *Fellows*, 28 N. H. (8 Foster) 302.

It is thus seen that, in reference to the question, when is the note so dishonored that notice of it may be forwarded to the

indorser, it may be at the earliest business hour on the last day of grace, or, by deferring the presentment, not until the latest hour of that day. In reference to the question, when does the note become dishonored so as to subject it, in the hands of a subsequent holder, for value, to the equitable defences which may be made as between prior parties? this question is to be determined upon the same view. The maker has the whole of business hours, down to the latest moment of the last day of grace, within which to pay it, unless payment is demanded by an earlier presentment. Without such presentment a party proposing to purchase the note may understand that it will be paid by the maker before the close of business hours; and, without presentment, it cannot properly be considered as dishonored, until, by the lapse of time, it has become impossible to pay it within reasonable hours on the last day of grace. This view is to be understood as limited to the case of a note payable generally. Whether, when the note is payable at a particular place — as a bank — it is to be considered as dishonored at the earliest business hour on the last day of grace, that it may be shown to be at the bank, or other designated place, on the ground that this is all the presentment required in such case to effect its dishonor, either for the purpose of charging indorsers or of impairing its negotiable quality as commercial paper, is not necessary to be considered. Here the note was payable generally, and it does not appear that it became dishonored by reason of a presentment and neglect to pay, but only by the lapse of business hours on the last day of grace without payment. The evidence tended to show that before that time the plaintiff became the holder for value, and the instructions that, in taking it from the bank on that day, before the close of business hours, it did not come to his hands as a dishonored note, were correct.

But it is contended by the defendant that the court erred in limiting their instructions to the inquiry by the jury whether the plaintiff had knowledge of the defect in the note, and that they should have been instructed that if the plaintiff did not take it in the usual course of business, or if the circumstances under which

Crosby *v.* Grant.

he took it were such as to put him on inqury, it was subject to the defence, in the same manner as if he had knowledge.

The general proposition that the note, in order that it may be protected against equities as between prior parties, must be taken in the usual course of business, is undoubtedly correct. If it be received on any other footing than as a *bonâ fide* purchase by the holder, independent of any previous connection with it, or with any of the parties upon it, so that he does not take it as such paper ordinarily passes from the holder to the indorser upon a purchase and sale of the security, then he takes it, not in the usual course of business, and consequently subject to the same defences as if negotiated after dishonor. It passes as commercial paper, protected by the law merchant from such defences, when, at any time before dishonor, it is purchased in good faith and transferred to the hands of a purchaser, as a new holder for value, without knowledge of an existing defect. And it is immaterial at what time it may be thus purchased and transferred, if only it be before it becomes dishonored. It must be understood, upon the case presented, that it came to the hands of the plaintiff as a purchaser for value, in the mode in which such negotiable paper is ordinarily transferred by one, being the holder, to his indorsee upon a sale. Nothing appears in the case to show that any question was raised upon the evidence at the trial, or that any was intended to be raised for the consideration of this court upon this branch of the case. If the plaintiff took the note from the bank on account of Bradford & Macomber, or Tisdale, or any other party upon it, in virtue of any other previous arrangement, or upon his own account, in virtue of his previous connection with it, or with any party to it, then it was not taken in the usual course of business. But the question, whether it was or not so taken, does not in any degree depend upon the time, whether longer or shorter, it then had to run before it matured. If the circumstances under which it was taken by the plaintiff, when it had a long time to run before maturity, and such as to give to the transfer the character of one made in the due course of business, the existence of the same circumstances in the case of

a transfer made but a day before maturity, or, as in this case, on the day it matured, differing only in the length of time it had to run before it matured, would give to the transfer the same character as one made in the usual course of business.

Bills and notes are not indeed so frequently negotiated when they are upon the point of maturing, as at an earlier stage. But if so negotiated by the holder to a new party, entirely upon the footing of a purchase and sale of the security, they are negotiated in the due course of business, whether the transfer be at an earlier or later period, in reference to the time of their maturing.

It may be supposed that a question was made before the jury, by the defendant, whether the note, if taken from the bank by the plaintiff, was not taken on account of Bradford & Macomber, or Tisdale, or on some other ground than a purchase by him of the bank. Upon this question, the circumstances that it was taken on the last day of grace, and the full amount paid, may have had much weight. If the state of the evidence was such as to raise that question upon the trial, it cannot be understood that the court did not instruct the jury fully and properly upon the subject of the plaintiff's failing to maintain his action, in case they should find that he took it from the bank as the agent, or on account of some prior party, or on his own account, by virtue of some previous agreement to that effect, with some prior party, and not as a *bonâ fide* purchaser, although it may not have been by reference in terms to the legal maxim declaring the rule upon the subject — that he could not recover if it appeared that it was not taken in the due course of business.

Upon the other ground of exception, that the jury were not instructed that they were at liberty to find for the defendant, if the proof satisfied them of the existence of circumstances of suspicion by which the plaintiff was put upon inquiry, it is not to be questioned that numerous early authorities are to be found sustaining the position that where there are circumstances of suspicion, such as would put a prudent and cautious man upon inquiry, the party becoming holder under those circumstances

takes the bill or note, subject to all the equities, as between prior parties. More recent decisions would seem to repudiate the doctrine, on the ground that it opens too wide a door for the introduction of defences to commercial paper held by indorsees for value, without actual notice of any defect or infirmity of title, and that it is inconsistent with the liberal policy of the law merchant, in reference to the free circulation of such paper. In these later decisions courts avowedly aim at removing all obstructions to its negotiability, so far as it may be done upon consistent grounds, by holding that, in the absence of actual knowledge of the defect or infirmity, the only circumstances sufficient to let in prior equities against a holder for value, before dishonor of the bill or note, are such as amount to proof of bad faith on his part in becoming the holder. Gross negligence, even, is held to be insufficient *per se*, though it may constitute evidence of *mala fides*. *Goodman* v. *Harvey*, 4 Ad. & El. 870; Chitty on Bills 216; Story on Prom. Notes, sec. 197; *Uther* v. *Rich*, 10 Ad. & El. 784; *Fisher* v. *Leland & als.*, 4 Cushing 456. This doctrine is to be limited, however, to strictly commercial paper, and therefore the bill or note is not protected if on its face it appears to have been made, not for circulation as such paper, but for some specific purpose, inconsistent with its general circulation. *Fowler* v. *Brantby*, 14 Peters 318.

In this case there is nothing upon the face of the note to indicate that it was not to have currency as commercial paper. It is payable on time, to Bradford & Macomber, or order, and is in all other respects in the usual form of negotiable promissory notes, intended for general circulation. With the indorsement of Bradford & Macomber upon it, any holder, taking it for value before it became dishonored, upon the authorities cited would be protected by the principles of commercial law against any defect or infirmity of title, though such as might have rendered it invalid as between the original or prior parties, unless the circumstances under which he became the holder were such that a jury might find upon them that he had knowledge of the defect or infirmity, or that he acted in bad faith in taking it.

Crosby *v.* Grant.

If, however, the doctrine of the earlier cases upon the subject is to be applied, what are the circumstances disclosed by the case which should have put the plaintiff upon inquiry? Three have been suggested in the argument, as sufficient for this purpose: 1. That the note remained in the New-England Bank— stated in the argument to be a bank in Boston, Massachusetts, though not appearing in the case — until the last day of grace; the maker's place of residence being, as is alleged, at Great Falls, in this State, though not stated in the case. 2. That the plaintiff took the note from the bank on the last day of grace, paying the full amount of the note, his name not appearing upon it as indorser or other party; and, 3d, that the indorsement of Tisdale, and that of some other party, so erased as to be illegible, appear to be erased.

But of these circumstances, assuming that they existed as supposed, the first two, it is clear, furnished no just ground for suspicion that there was any defect or infirmity in the title. That the note had not been forwarded to Great Falls, for presentment to the maker, in order to charge the indorsers, may have been because this would have been unavailing on account of their insolvency, or because, if solvent, the bank was content with the security of the maker alone; or it may be that they proposed to forward it on the last day of grace for presentment, and were saved from the necessity by the plaintiff's taking it from the bank on that day. The mere fact that the plaintiff found it there on that day, within business hours, unaccompanied by other circumstances pointing to the alleged illegality in the consideration, furnished no ground for suspicion that it was illegal. Neither this nor the other circumstance suggested, that the plaintiff took the note from the bank on the last day of grace, paying the full amount of it, although not a party upon it, has any necessary connection with or reference to the alleged defect; and nothing appears in the case to bring either into connection with it. The question here is, not whether the acts of the plaintiff, in thus taking the note from the bank and in erasing the indorsement, if done by him, or in receiving it with the indorsement erased, if done by prior parties, may not give rise to the suspicion that he

Crosby *v.* Grant.

knew of the illegality in the origin of the note, or took it from the bank merely as the agent of some other party. A state of facts may be conceived where acts of this character might not merely awaken suspicion, but produce conviction upon those questions. This has all been open to the plaintiff upon the trial of those questions before the jury. Here the inquiry is, whether there were circumstances connected with the note, presented to his observation at the time of taking it, calculated to awaken his suspicion and put him on inquiry. His own acts do not fall within the scope of that inquiry. If the case showed that the erasure of the indorsements had been made prior to his taking the note, perhaps this might be regarded as a circumstance casting suspicion upon it. In the absence of any proof on that point the fair presumption is that the indorsements were erased by himself, after he became the holder; that of Bradford & Macomber being retained to show his title to the note as indorsee.

But if the facts in the case warrant an amendment, such as to show that there was evidence upon which the jury might have found that the erasures were upon the note when the plaintiff took it, or that he did not take it in the usual course of business, still, upon another ground, the defendant cannot now take the exception that the instructions contended for were not given. The instructions, so far as they go, are correct, and the evidence in the case required them. The cause was submitted to the jury upon those points which the court, at the trial, understood to be involved in the case, and upon which it was supposed to *hinge*, with proper instructions on those points, and they were points brought out by the evidence. The defendant claims that other distinct points were raised by the evidence, not embraced in the instructions, but, in his view, material to the issue. No request was made to the court to instruct the jury upon these other points. By this omission it must be understood that the defendant was content to submit the cause to the finding of the jury upon the points embraced in the instructions, and to take his chance of a favorable result upon them. It is now too late for him to raise the questions which he thus waived at the trial.

*Judgment on the verdict.*