## MERCHANTS' NAT. BANK OF BROWNSVILLE v. CROSS. (No. 7525.)

(Court of Civil Appeals of Texas. San Antonio. March 17, 1926. Rehearing Denied April 17, 1926.)

1. **Judges** ⊚⊷47(1)—**District judge held not disqualified because he was employed while an attorney by counsel for plaintiff, where he was not a member of firm and had no interest in the case (Const. art. 5, § 11; Rev. St. 1911, art. 1675).**

District judge *held* not disqualified from trying cause on ground that, being an attorney at law, he was employed in office of counsel for plaintiff while cause was pending on docket of district court, in view of Const. art. 5, § 11 (Rev. St. 1911, art. 1675), where it did not appear that he was at any time a member of the firm by whom he was paid a salary, or that he had ever been counsel in the case, or had any interest therein.

2. **Limitation of actions** ⊚⊷25(1), 66(15)—**Certificate of deposit, contemplating payment on demand at any time within twelve months, became due, as respects limitations, one year from its date, where no demand was made, and was governed by four-year statute.**

Certificate of deposit, payable to order of depositor three months after date on return of certificate with interest for all full months if left three months, and interest to cease after one year, contemplated a payment on demand at any time within twelve months, and, no demand having been made within that time, certificate became due one year from its date, and hence suit commenced within four years from due date was not barred by limitations; two-year limitation statute being inapplicable.

3. **Customs and usages** ⊚⊷12(1)—**Bank held entitled to pay certificate of deposit of Mexican money in Mexican bills according to custom prevailing at time of deposit.**

Where one making deposit of Mexican money, and receiving certificate of deposit therefor, had knowledge of bank's custom to pay

all checks on Mexican funds in Mexican bank bills, and he manifested no intention to reject such custom as to Mexican bank bills until they depreciated in value, bank was not required to repay deposit in Mexican coin or its equivalent in American money, but might pay it in Mexican bills.

**4. Customs and usages ⊝13—Custom of banks to repay deposit of Mexican money in Mexican bank bills became part of certificate of deposit, where depositor had knowledge of custom.**

Where custom of banks receiving deposits in Mexican money to repay them in Mexican bank bills was known to depositor when making deposit of Mexican money, such custom entered into and became a part of certificate of deposit.

**5. Customs and usages ⊝10.**

Where custom of banks to repay deposits of Mexican money in Mexican bank bills became part of certificate of deposit, liability could not be affected by subsequent change in custom.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Action by M. H. Cross, on whose death Meliton Cross, executor, was substituted against the Merchants' National Bank of Brownsville. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Graham & Graham, of Brownsville, for appellant.

Seabury, George, Taylor & Polk, of Brownsville, for appellee.

FLY, C. J. Appellee sued appellant to recover on a certificate of deposit showing that appellee had deposited with appellant the sum of $6,832.36, Mexican money, or its equivalent in money of the United States of America, at the ratio of 73 cents in American money for every dollar in Mexican money. Afterwards the death of M. H. Cross was suggested to the court, and an amended petition was filed by Meliton Cross, independent executor of 'the last will and testament of said M. H. Cross, deceased, in which was embodied a copy of the certificate of deposit for $6,836.36, and in which a detailed statement of the circumstances surrounding the deposit is fully alleged and 'the refusal of appellant to repay the money deposited according to the terms of the contract. Appellant filed a general demurrer and a number of special exceptions to the petition, and for answer denied all the allegations, and that the money was deposited with full knowledge of and acquiescence in a custom to pay off all certificates in Mexican money in Mexican bank bills of the issues of the Banco Nacional de Mexico, Londres de Mexico, Banco Mercantil de Monterey, Banco Tamaulipas, and Banco Nuevo Leon at the par or face value of said Mexican bank bills, and that appellant stood ready to pay off the certificate sued on in such bank bills, and tendered into court $7,105 in such bank bills to pay off such deposit, with the accrued interest. Appellant also set up an agreement signed by the sons of and attorneys in fact for M. H. Cross, wherein it was agreed, in consideration of the bank agreeing to carry in its vaults the bills of certain Mexican banks "in sufficient amounts to pay our checks or balances, we agree to accept from said Merchants' National Bank Mexican bank bills issued by above mentioned three banks at any time and all times in settlement of any balance which may be due us and in payment of all checks which we will draw against said account, regardless of the solvency or financial condition of said Banco de Tamaulipas of Tampico, Mexico, Banco Nacional de Mexico, and Banco Londres y Mexico, and we assume ourselves the risk of future value of said bank bills." The cause was tried by the district judge, without a jury, and judgment rendered in favor of appellee for $5,220.29.

The record discloses that this suit was filed on October 30, 1917, by Hon. F. W. Seabury, as attorney for M. H. Cross, and was not tried until July 24, 1925. Mr. Seabury was a member of the law firm of Seabury, George & Taylor, who represented the appellee at the trial. The cause was tried by Hon. A. M. Kent, judge of the district court of Cameron county.

[1] Through the first proposition under the first assignment of error it is contended that the district judge was disqualified from trying the cause, on the ground that, being an attorney at law, he was employed in the office of counsel for appellee from early in 1919 to February, 1921, while this cause was pending on the docket of the district court. The testimony set out in a bill of exceptions showed that the trial judge was employed on a monthly salary by the firm representing appellee, but was not a member of the firm. He gave his attention to any matter the firm might desire him to give his attention. He was paid "a salary and a commission on the amount earned on collections without suit and in county and justice court cases." That was the plan at first, but afterwards only a salary was paid. The judge testified that he attended to some cases in the county and justice's courts, and worked on one district court case. He stated:

"So far as I call to mind, I never had any instructions from my employer not to have anything to do with their district court business. I understood I was employed in the office generally, and they would direct me what they wanted done, and I did that."

The judge knew nothing about this case, and did no service of any kind in it.

The state Constitution provides in section 11 of article 5:

---

"That no judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case."

The statute article 1675 is to the same effect as the Constitution, except that it provides what degree of relationship will disqualify. It is sought in this case to disqualify the judge, of course, on the ground that he had been of counsel in the case. The testimony fails to show that the trial judge was at any time a member of the firm by whom he was paid a salary; that he ever had been of counsel in the case or had any interest whatever in it. Appellant points to no case in which it is held that the employee in a law office was of counsel in all its cases, and thereby disqualified under the Constitution to sit in cases held by the firm which were pending while he was such employee. It is not open to discussion that if Judge Kent was a member of the firm of Seabury & George, or Seabury, George & Taylor, while this suit was awaiting trial, he would be disqualified whether he knew of the existence of such case or not, or regardless of the fact that he may not have been entitled to any part of the fee in the case. Each member of a law firm is of counsel, in the purview of the Constitution, concerned in every case in which the firm is of counsel, whether he knows anything about it or is interested in the fee or not. That is the holding in all cases to which our attention has been called. The disqualification has never, so far as we know, been extended to stenographers or other employees in law offices. There is no force in the contention that the firm showed that it regarded Judge Kent as a partner, because he was told, after he became county attorney, that he should quit the office in order that the firm might defend those charged with criminal offenses. It is clear that this was done because it would subject the firm and the county attorney to criticism, if the latter prosecuted and his employers defended criminals. The proprieties of the situation demanded the action taken. Judge Kent was never a partner in the firm, and consequently could not have been of counsel in a case, pending when he went into the law office as an employee, of whose existence he had no knowledge. It is sought to disqualify the district judge solely on the ground that he was of counsel in the case. No account is taken of the fact that the trial judge might be biased in favor of counsel for appellee because of his former employment, but the disqualification must be tested by whether or not he had been of counsel. Bias or prejudice in favor of or against one party or the other is not made a ground of disqualification of a district judge in Constitution or statute. The first assignment and proposition are overruled.

[2] The certificate of deposit given M. H. Cross is dated May 7, 1913, and provides that it is "payable to the order of himself three months after date on the return of this certificate properly indorsed, with interest at the rate of 4 per cent. per annum for all full months if left three months, interest to cease after one year." The suit in this case was filed on October 30, 1917, more than four years after the date of the instrument and the due date of three months after the date of the certificate. Appellant interposed the plea of limitations of two and four years to the cause of action.

We think it clear that the instrument was due and payable three months after its date, if there had been no other matters stated. If it were a promissory note no one would hesitate to say that the instrument fixed its due date at three months after its date, and no valid reason can be offered for giving a different meaning to the language when used in a certificate than when used in a promissory note or other contract. But the language following the three-month due date would seem to indicate that it was expected to run for a year, and a reasonable construction of the instrument seems to be that the money might be demanded before the end of the three months, but such demand would carry with it a forfeiture of all interest, and it is further provided that in case the payee or depositor does not demand his money when due that interest will be paid for twelve months, but after that time will cease. It seems clear that the money was due in three months, but might be demanded in less time at a loss of the interest, or it might be left on deposit for a year and the interest be paid, but to cease after the year. The instrument seems to contemplate a payment on demand at any time within twelve months, and as an encouragement to the owner to leave it on deposit for twelve months a promise of interest for that time was made. A due date of three months is fixed, but the payee has the power to extend that date to twelve months from date, a promise of interest for that time being held out to induce the extension. The amount under the terms of the certificate was due on demand in spite of the due date, and the depositor had the right to demand the amount in three days after it was deposited or earlier, and in spite of the due date the depositor had the right to leave the deposit for twelve months and demand interest thereon. The depositor could cause the money to become due at any time within twelve months, and the bank precluded itself from paying the deposit for a less time than a year by binding itself to pay interest for that length of time. Under this construction the certificate would be barred by limitation in four years from May 7, 1914— that is, May 7, 1918. It follows that the certificate was not barred by limitation when the suit was instituted on October 30,

1917. The two-year limitation has no applicability to the certificate. This view disposes of the second and third propositions.

Consideration of the fourth proposition which depends on the evidence necessitates a. full and careful consideration of the evidence as to the kind of money deposited in the bank in 1913, when the certificate of deposit was issued, the custom prevailing in Brownsville, the situs of the bank at that time, and other matters bearing on the contract between the parties as to what kind of money was intended and expected to be returned on the certificate of deposit.

[3, 4] It is asserted by appellant in its brief, not questioned by appellee, and supported by the statement of facts, that separate accounts were carried in the Brownsville banks for American and Mexican money, and appellant "kept two separate and distinct systems of books therefor, and that there was a general custom in Brownsville of paying obligations that called for payment in Mexican money in Mexican bank bills of five Mexican banks, Nacional, Mercantil, Nuevo Leon, Tamaulipas, and Londres y Mexico." When a customer made a deposit or brought in Mexican money the record of it was kept in the Mexican ledger. M. H. Cross had two accounts, one for Mexican money and the other for American money, the former being worth one-half the value of American money. At the time the deposit for which the certificate was given was made, a distinction was made as to Mexican coin, and there was an agreement among the banks that bank bills and all deposits that called for payment in Mexican money were to be made in Mexican bank bills, and M. H. Cross nor any of the other Crosses ever demanded, before or after 1913, payment of Mexican deposits except in Mexican bank bills, until in 1917, when payment was sought by M. H. Cross of the certificate in Mexican pesos, which meant Mexican silver dollars, or in Mexican silver half dollars. At that time Mexican bank bills had materially decreased in value. John Fernandez, who was president of the bank in 1913, testified:

"At the time this certificate was issued, there was no distinction in value between the gold and silver and bills. During that period, when they were at par, I never did have any opportunity to refuse any one's demand for silver; nobody asked for it that I know of, and if, for example, Cross' successors had drawn on us for $500 and asked payment in silver, we would have given it to him, but never asked. * * * If my memory serves me right, Mexican bank bills began to depreciate about the 1st of January, 1914, about eight months to a year after the Revolution."

John Gregg swore that white checks were used to draw against bank deposits in American money and red checks to draw against accounts in Mexican money, and the latter were paid always in Mexican bank bills. No question or objection was ever raised as to the custom except by Cross and two other persons in 1917.

As to the question of custom or usage, the evidence was that the depositor might deposit gold, silver, or bank bills, and then payment would be made to him in bank bills, but the rule was to pay all checks on Mexican funds in Mexican bank bills. There was no difference at the time the deposit was made by M. H. Cross between the value of metallic and paper money. The bank bills were issued under the authority of the Mexican government, and passed current as Mexican money, and in Brownsville it was the invariable rule and custom to pay all checks in bank bills no matter what kind of money was deposited. M. H. Cross and his two sons separately and as partners knew of the custom, and no objection was ever made to receiving the bank bills until 1917, four years after the deposit was made by M. H. Cross. His certificate was due in May, 1914, and he knew that the bank bills were declining in value at that time, but he uttered no protest against any payments made to him or his firm in bank bills. There was a steady decline in the value of the bank bills from month to month and year to year, and yet not one word was uttered by the depositor until over three years had passed of steady decline in the bank bills, in which payment of his deposit was fixed by a well-established custom with which he was fully acquainted. Fernandez, the bank president, when the deposit was made, stated that Mexican gold or silver was never demanded at that time, and that the customers of the bank did not have the right to demand that the bank pay gold or silver, and if a check was ever paid in gold or silver it was merely as a matter of accommodation. He said:

"The universal practice in Brownsville for a great many years and up to the time this instrument was issued in 1916, as to the right of the bank who had Mexican money deposits, the universal practice was it was payable in bank bills."

Bank bills of the herein named Mexican banks were kept in the bank in sufficient quantities to pay all deposits in Mexican money. John Gregg, the cashier at the time the deposit was made, now the president of the bank, swore:

"The custom was that Mexican money obligations of the bank to a customer were paid in Mexican bank bills."

The evidence of Gregg tended to show that at least 95 per cent. of all the Mexican money deposited by the Crosses and others was Mexican paper money, and the Crosses universally accepted Mexican bank bills drawn on their Mexican account. All of the deposit slips of J. S. & M. H. Cross showed that they

were deposits of Mexican money. No one had ever questioned the fact that all deposits in Mexican money were payable in Mexican paper until demand for silver was made by M. H. Cross in 1917, after Mexican paper money had greatly depreciated in value. As said by the Commission of Appeals discussing the claims of Mrs. Barreda in Barreda v. Nat. Bank, 252 S. W. 1038:

"As stated, Mrs. Barreda knew of this custom. She accepted the certificate of deposit payable in Mexican money; she accepted Mexican bank bills in the payment of that part of the principal paid her and in payment of interest on her various certificates for quite a number of years. We cannot conceive, therefore, that there was ever any liability on the part of defendant bank to pay her in American money at the rate of $1 for every two of Mexican money, or that the contract of deposit was to be met by the payment of Mexican silver, and we think that the evidence clearly upholds the Court 'of Civil Appeals in their holding that she was to be paid in Mexican bank bills, as was customary at that time and since."

The facts in that case were very similar to the facts in this case, and it can be said of M. H. Cross herein, as it was said by this court of Mrs. Barreda (241 S. W. 743):

"The evidence demonstrated that the custom among the banks of Laredo was to place their dealings in Mexican money upon a different footing from those connected with the stable finances of the American government, and that custom must have been known to Mrs. Barreda, for, when acted upon in regard to the interest arising from her time deposit, she at no time complained until after the finances of Mexico had been wrecked upon the breakers of disturbance and revolution."

The evidence fails to disclose a single circumstance upon which to base a supposition that it was contemplated by the parties or either of them that the certificate of deposit would be paid off in any but the Mexican money used by every bank in Brownsville in paying off deposits. M. H. Cross knew of the universal and unvarying custom which had made Mexican money at that time mean Mexican bank bills. He let no one know that he expected silver Mexican or American until the Mexican bank bills had become "mere scraps of paper." He was charged with the knowledge that his firm had written an instrument admitting that their deposits in Mexican money meant Mexican bank bills, but independently of that instrument he knew what such deposits meant. He was a business man dealing largely in Mexican money, and he knew the customs and usages of American Banks in Brownsville, as well as the bankers themselves. Then, either by the test laid down by the Supreme Court of the United States in Fowler v. Brantly, 14 Pet. 318, 10 L. Ed. 473, that the parties to the contract "must be understood as having governed themselves by such customs and modes of doing business, and this, whether they had actual knowledge of them, or not," or, as expressed by the Commission of Appeals in the Barreda Case, in which the Supreme Court decision does not meet with approval, and it was said "the parties must have had actual knowledge of such usage and custom, or to have been in a position where the presumption of knowledge would be charged against them," M. H. Cross was bound by the course of business in Brownsville. Of course there is no real difference between the rule laid down by the Supreme Court of the United States and the Texas Commission of Appeals, because both of them holds in different terms that actual knowledge is not necessary, but knowledge may be implied or presumed from the circumstances. M. H. Cross had both actual and implied knowledge of the custom or usage of the banks as to Mexican deposits. The custom or usage as to Mexican money meaning, in Brownsville, Mexican bank bills, entered into and became a part of the certificate of deposit, and M. H. Cross knew that fact.

In the case of Barreda v. Milmo National Bank, 241 S. W. 743, similar questions to those in this case were presented to this court. In that case Mrs. Barreda had deposited a large sum in Mexican bank bills in the Milmo National Bank of Laredo, when the bank bills were at par with Mexican gold and silver, as Cross deposited bank bills under like circumstances. She, like Cross, waited until Mexican bank bills became worthless, and then sought to recover for their value at the time deposited in gold or silver. It is true that the facts were more fully developed in the Barreda Case as to all the circumstances surrounding the transaction, and the certificate therein was payable in "current funds," but in the general aspects of the two cases the facts are the same. The custom or usage as to paying deposits in Mexican money in bank bills was conclusively proved in this case as in that, and the testimony tending to show that probably 95 per cent. of the deposits were in bank bills brought this case into line with the Barreda Case, in which the deposit was in bank bills. We reiterate the rulings in the Barreda Case, which are applicable to and decisive of the case now presented by the facts herein. We held in the Barreda Case that Mexican money, under the facts, was a commodity rather than money, which did not go as far as eminent text-writers and that highest of all human tribunals, the Supreme Court of the United States, go in holding that foreign money generally is a commodity.

A writ of error was granted in the Barreda Case by the Supreme Court of Texas, on what ground is not intimated in the opinion affirming the decision, which was entirely devoted to a discussion of the well-settled proposition that a well-known custom or usage will enter into and become a part of a contract to which such custom is applicable.

That question was fully considered and a number of authorities reviewed in the opinion of this court in the Barreda Case, and there are no lines of cleavage between that opinion and that of the Commission of Appeals. Barreda v. Bank, 252 S. W. 1038. It is true that in the last-named decision it is stated that the court could not adopt that part of the doctrine of the United States Supreme Court in a number of cases in which it was held that the known customs of the bank were matters of proof and entered into the contract, and that the parties will be deemed to have governed themselves by such customs and modes of doing business "whether they had actual knowledge of them or not." Fowler v. Brantly, 14 Pet. 318, 10 L. Ed. 473, and authorities cited. However, the rule as stated by the Commission of Appeals in no wise differs from the rule as laid down by the Supreme Court, for the Texas court holds that the knowledge of the custom need not be actual, but may be that imputed to parties because they were "in a position where the presumption of knowledge would be charged against them." In this case M. H. Cross had both actual and presumptive knowledge of the custom of the banks of Brownsville, and such customs and usages entered into and became as fully a part of the contract as though expressed in terms therein. The facts of the case show that no disposition was ever evinced to reject the custom prevailing in Brownsville as to Mexican bank bills, until years afterwards when the bank bills had become worthless. Appellee cannot take advantage of the change in value of the money and pass the laches and neglect of M. H. Cross to the shoulders of appellant. He knew the bank bills were surely being depreciated in value, and should have made some effort to protect himself from the clearly indicated, eventual worthlessness of his bank bills. He alone is responsible for holding them, and he should not be heard to object to receiving them when tendered into court with all interest as has been done by appellant.

[5] The custom and usage of the banks in Brownsville in 1913, when the certificate of deposit was issued, must prevail, and the contract into which they entered and became a part can in no wise be altered or affected by any acts occurring in 1914 or later. A change in the custom in existence at the time of the execution of the contract could not change that contract. The changing conditions in the banking business and the fluctuations and decreasing values of Mexican money, may have changed and doubtless did change the mode of handling Mexican money, but the status of the contract of 1913 could not be affected thereby.

We have considered all matters vital to the decision of this cause, and need not extend this opinion by a discussion of immaterial matters.

The judgment will be reversed, and judgment here rendered that the $7,106 in Mexican bank bills deposited in the register of the district court be placed in the possession of appellee, that appellant go hence without day, and that appellee pay all costs in this behalf expended in this and the lower court.