HUMBLE OIL & REFINING CO. v. WICHITA STATE BANK & TRUST CO. et al. (No. 3104.)

Court of Civil Appeals of Texas. Amarillo. Nov. 21, 1928.

Rehearing Denied Dec. 19, 1928.

Fitzgerald, Hatchitt & Pittman, of Wichita Falls, for appellant.

Cox & Fulton, of Wichita Falls, and Winfrey & Lane, of Dallas, for appellees.

HALL, C. J. This is an action brought by the appellant against the Wichita State Bank & Trust Company and the Central National Bank of Dallas. The appellant alleges: That it made four drafts upon Brownfield & Compton of El Paso, which drafts it delivered, with bills of lading attached, to the Wichita bank, which said bank received and gave appellant credit upon its books for the aggregate amount of said drafts, and forwarded them with the bills of lading attached to its correspondent, the Central National Bank of Dallas, to be by said last-named bank forwarded to El Paso for collection. That said Dallas bank, through its correspondent, the City National Bank of El Paso, presented said drafts to Brownfield & Compton at El Paso, and that the amounts due were paid by the drawees. That the El Paso bank remitted the amount collected to the Dallas bank in exchange made payable to the Dallas bank as follows: (1) Exchange for $849.86, dated May 1, 1924, on the Seaboard National Bank of New York City; (2) exchange for $901.40, dated May 2, 1924, on said Seaboard National Bank; (3) exchange for $485.30, dated May 9, 1924, on the Fort Worth National Bank; and (4) exchange for $566.64, dated May 5, 1924, on the South Texas Commercial Bank of Houston. That each of said drafts or instruments of exchange were indorsed by the Central National Bank of Dallas to the Wichita State Bank & Trust Company without recourse.

Appellant further alleges that, subsequent to the receipt of said drafts by the Central National Bank of Dallas, and prior to the presentation thereof for payment, the City National Bank of El Paso closed its doors, and went into the hands of the national bank examiner, and said drafts or exchange were not paid; that thereupon the Wichita bank, without any right or authority from appellant, deducted the amount of said drafts from the appellant's funds on deposit with it, and withheld the same from appellant, to its damage in the amount sued for; that, under the circumstances set out hereinbefore, the Wichita bank became the owner of the original drafts first mentioned, and acquired title thereto, and undertook to collect same through its correspondent, the Central National Bank of Dallas, whereby the Wichita bank became justly indebted to the appellant in the sum of $2,803.20, which it wrongfully charged to appellant's account upon its books, and deducted their amount from appellant's funds.

Appellant alleged in the alternative that, if it be mistaken as to the facts above set out, then that the Wichita bank was guilty of negligence in allowing its correspondent to accept exchange instead of money in payment of the original drafts and especially in accepting drafts on various and sundry banks throughout the country without the knowledge or consent of appellant, thereby becoming liable to account to appellant for its negligence. Appellant further alleged that, if it be held that the Wichita bank is not liable upon the two theories above set out, then that the Dallas bank was guilty of negligence in the manner in which it undertook the collection of said drafts and the instructions thereon given to remit in exchange, and that it was further guilty of negligence, in that it accepted exchange on various and sundry banks throughout the country instead of requiring the El Paso bank to remit the amounts due in money; that said Dallas bank directed the El Paso bank to remit by exchange on Dallas, and thereafterwards accepted exchange on banks remote from Dallas, all of which resulted in delay; and that the El Paso bank became insolvent in the meantime. The prayer is for judgment against both of said banks, jointly and severally.

The defendant, the Wichita bank, answered by general demurrer, general denial, and by special answer, admitting the deposit of the drafts set out in appellant's petition, but stated that it accepted said drafts for collection and as agent of appellant in assisting in the collection of the drafts; that, in accordance with the custom of banking institutions and banking business in Texas, and in the country in general, it issued to appellant its deposit slip for each of the items set out; that on these slips it was specifically stated that the drafts were entered for collection; that it was understood at the time of the transaction between the bank, and appellant that the drafts were delivered to the bank for collection only, as was the custom of said bank; that the bank had a custom of giving credit to its customers who had on deposit with said bank a good account, and, in the event such paper was not paid, it was charged back to said customer; that appellant was acquainted with said custom at said time, and that the only legal duty incumbent upon the Wichita bank, was to use reasonable diligence and discretion in selecting a corresponding bank to act for the appellant in presenting said drafts and to forward said drafts to such corresponding bank with reasonable diligence.

It then alleges the performance of such legal obligations. It is further alleged that appellant gave no instructions to the Wichita bank as to any particular corresponding bank to handle the same, but left it to the Wichita bank to select the subagent to collect said draft, and whatever action was taken by the Central National Bank of Dallas is a matter between appellant and said bank; that the Wichita bank was not responsible for the things pleaded by the appellant as to the final collection of the drafts or the manner or means of transmitting the funds to the Dallas

bank; that the Wichita bank was not responsible for any of the acts or conduct alleged against the Dallas bank; that said Wichita bank received notice from the Dallas bank of failure to collect said drafts, and promptly notified appellant of such fact, and inquired of its agent as to further procedure in the matter; that defendant canceled and withdrew the credits and receipts given for said drafts, as it had a right to do, and, upon instructions of the appellant, forwarded such drafts to appellant's Houston office immediately upon their return, thereby discharging its obligation fully as to appellant.

The Central National Bank of Dallas answered, alleging that, during the year 1924, the Wichita bank had on deposit with it certain sums of money under the following agreement:

(1) "Items drawn on this bank not good at close of business day on which they have been deposited may be charged back to depositor.

(2) "Items received for collection or credit and not drawn on this bank are taken at depositor's risk and should any such items be lost or should no returns be received within a reasonable time, said items may be charged back to depositor."

It is alleged that under this agreement the Dallas bank reserved the right to accept drafts or other exchange in payment of collections, and exempted itself by agreement with said Wichita bank from failure to collect the drafts so received; that the drafts constituting the basis of this suit were accepted by the Dallas bank from the Wichita bank under that agreement, and that it performed its obligations under the agreement strictly in compliance therewith. It then alleged the custom and usage with reference to collecting drafts, forwarding same for collection, and, if payment was refused, the custom of charging the amount thereof against the depositor.

The case was tried by the court, without a jury, resulting in a judgment that the plaintiff take nothing. No findings of fact were filed by the trial court.

By its first two propositions, it is insisted that the court erred in permitting several witnesses to testify that it was the universal custom throughout the country that, when a bank received a draft from its depositor for collection outside of the city, it then gave to the drawer credit for the amount thereof, subject to payment when presented, and, if not paid, the amount would then be charged against depositor's account. Complaint is further made because numerous witnesses testified that it was the general and universal custom throughout the country that, when a bank received a draft from its corresponding bank for collection, on another bank outside of the city, it would forward said draft to its corresponding bank in the city where the payee resided, or direct to the bank in care of which it was drawn, if it had no correspondent, with instructions to remit by exchange and not in cash.

■ Both banks pleaded that the drafts were handled in the usual and customary manner, and the sufficiency of the pleadings was not attacked. Several witnesses who had been in the banking business for years, and whose competency was not questioned, testified, in reply to hypothetical questions, that the drafts were handled by the defendants in the usual and customary manner, and that the method in which they were handled was in accordance with the general, notorious, and universal custom of banks in Texas and throughout the United States. One witness testified that all banks in the state of Texas employed the method used in the instant case. Their testimony further shows that the letter with which the Wichita Falls bank sent the item to the Dallas bank for collection contained instructions with reference to the drafts which were virtually universal in banking circles. The objection to this testimony was that it was irrelevant and immaterial, and, if such a custom existed, it would not be binding upon the appellant because it was not shown that the appellant had any knowledge of such custom. Appellant's agent, Hale, testified that he had been in the employ of appellant for several months; that appellant sold numerous orders of fuel oil, and that it was a part of his duties to make drafts with bills of lading attached, as in the instant case. He testified on direct examination that he did not know anything about the universal custom of banks in handling paper, nor as to the manner of remittances, or anything of that kind, at the time of the transaction in question. He further testified on cross-examination that he had handled drafts and commercial paper on fuel oil sales for ten or eleven months, and that, at the time he took the drafts to the bank, he certainly knew that the Wichita State Bank & Trust Company, nor any of the boys who worked there, would not go to El Paso to get the money; that he knew that the drafts would be presented to Brownfield & Compton by the City National Bank of El Paso, as specified on the drafts, and knew that the Wichita bank was not going down there or send any of its officers down there to present them; that he did not know how the drafts would go, but that it would be a natural assumption that they would be handled like drafts are ordinarily handled. The proof with reference to the custom is such that it was not necessary for appellees to show that appellant had notice of it. Appellant did not attack the reasonableness of the custom, and the uncontradicted testimony shows that it was valid, notorious, and generally known throughout the state of Texas and the United States amongst banks and their customers, and appellant must be affected with knowledge of it, and the presumption arises that appellant in the instant case dealt with reference to it.

The appellees were required to exercise due diligence in following the ordinary custom used by banks in matters of collection, and, the court having found that such diligence was used, we hold that the testimony was material and relevant, and, even though appellant had no actual knowledge of the custom, it is bound thereby. First National Bank of Memphis v. First National Bank of Clarendon, 63 Tex. Civ. App. 469, 134 S. W. 831; Waggoner Bank & Trust Co. v. Gamer Company (Tex. Sup.) 213 S. W. 927, 6 A. L. R. 613; Rodgers v. Farmers' National Bank of Nolansville (Tex. Civ. App.) 264 S. W. 491.

7 Corpus Juris, p. 512, declares the rule as follows: "A depositor in selecting a bank as his collecting agent, thus availing himself of its facilities for doing the desired services, is bound by any reasonable usage, whether he knew of it or not, prevailing among the banks where the collection is made"; and the same authority, at page 614, says: "It has been held that custom or usage may justify a collecting bank in receiving as payment the check or draft of the debtor drawn on another bank and if it follows the usual course of procedure in collecting a second paper with respect to time and place of presentation and other essentials, its whole duty to the depositor is performed." See, also, 1 Morse on Banks and Banking, pp. 454, 455, 456; 17 C. J. 450, § 9; Id. 479, § 42; 27 R. C. L. 157, 195–198; First Nat. Bank of Richmond v. Wilmington & W. R. Co. (C. C. A.) 77 F. 401; Merchants' Nat. Bank of Brownsville v. Cross (Tex. Civ. App.) 283 S. W. 555; Barreda v. Milmo Nat. Bank (Tex. Com. App.) 252 S. W. 1038.

■ It appears from the record that the drafts were drawn upon Brownfield & Compton through the City National Bank of El Paso. In sending the drafts to the City National Bank of El Paso for presentation to the drawees, the defendants were simply complying with the terms of the contract made with appellant and using the collecting agent at El Paso which appellant had designated on the face of the drafts.

The court filed no findings of fact or conclusions of law, and we do not know upon what theory judgment was rendered for appellees, but we think it can be sustained, either upon the proposition that the collections were handled in the usual and customary manner or upon the proposition that, in sending the drafts to the City National Bank of El Paso, the drawer's directions were complied with. Of course, if negligence had been shown on the part of either defendant in the transaction, the appellant might have been entitled to recover, but the presumed finding of the court is that there was no negligence, and we think this finding is supported by the record.

■■ The El Paso bank was the agent of the appellant in virtue of the notation upon each of the drafts, and it is settled law in Texas that the Dallas bank was the agent of appellant rather than of the initial bank. Tillman County Bank v. Behringer, 113 Tex. 415, 257 S. W. 206, 36 A. L. R. 1302; Behringer v. City National Bank (Tex. Civ. App.) 296 S. W. 674; Garver v. Howard, 113 Tex. 371, 257 S. W. 209.

■ The contention that the transaction between the appellant and the Wichita bank was a sale of the checks, and that the Wichita bank became the owner thereof, is without merit. The deposit slips given by the bank to appellant at the time of the transaction were in the usual form, and contained this printed item: "Checks as follows." Immediately following this was entered the drafts, stating the amount of each, and following this entry was this printed notation: "Entered for collection." If the transaction had been intended as a sale and transfer of the drafts instead of a deposit for collection, appellant would not have been authorized to name the collection agent at El Paso, so the presumed finding of the court that it was a transaction in the usual method whereby the initial bank undertook to collect the drafts for the appellant is sustained by the testimony. The fact that the drafts were accompanied by bills of lading for the shipments of oil for the purpose of which the drafts were made is additional evidence tending to show that the transaction was not a sale.

The contention that the Dallas bank was guilty of negligence in directing the El Paso bank to remit in exchange instead of cash and in receiving drafts issued by the El Paso bank for the amounts collected, said drafts being drawn on banks located outside of the City of Dallas, thereby resulting in delay during which time the El Paso bank became insolvent, we think is also without merit. The court heard the testimony, and has determined the issue of negligence on the part of the Dallas bank against the appellant, and we do not feel authorized to disturb that finding. The El Paso bank, which collected the drafts and remitted the amounts in exchange drawn upon various other banks outside of Dallas, is the agent designated in the original drafts by the appellant to make the collection, and, if any wrong has resulted, it is the fault of the El Paso bank, and not the Dallas bank.

We think a proper judgment has been entered, and it is affirmed.